This appeal follows the circuit court's grant of the defendant's motions for summary judgment on the plaintiff's claim and on the defendant's counterclaim.
The appellant/plaintiff presents two issues for our consideration:
 1. May evidence excludable under the provisions of the dead man's statute be considered to defeat a motion for summary judgment?
 2. Is summary judgment appropriate under the facts of this case?
The first issue was recently answered unfavorably to plaintiff's position asserted here in Beddingfield v. CentralBank of Alabama, 440 So.2d 1051 (Ala. 1983), and we now reaffirm that holding. Our answer to the first issue foreshadows our answer to the second. Without the evidence excluded under the dead man's statute, there is not a scintilla of evidence to support the plaintiff's claim. The evidence in support of defendant's counterclaim, on the other hand, is uncontroverted. The judgment of the trial court is affirmed.
Edna Richter, the appellant/plaintiff in this case, is a widow who worked as a technical writer-editor at Redstone Arsenal until she took disability retirement because of failing eyesight. She has the equivalent of a junior college education, and in addition has had job-related courses in electronics and writing. She is considered legally blind, but reads with a magnifying glass and, on occasion, drives a car.
The evidence shows that in February of 1979, Rube Brett and Mrs. Richter, who were engaged to be married, submitted a joint credit application to Central Bank of Alabama. The application sought a construction loan in the amount of $42,600.00. The loan was approved and on March 8, 1979, Brett and Mrs. Richter attended the closing of the loan and purchase of a piece of property on Orba Drive, on which they intended to build a house. Also present were the bank vice-president and loan officer, Charlie Mills, and an attorney, Raymond Uhrig. Uhrig had prepared the mortgage and title search on the property at the request of Brett, but stated in his deposition that he was not at the closing as counsel for Brett and Mrs. Richter, but merely as an observer.
After construction was begun, the loan was renewed and additional amounts borrowed. Twice during construction the house burned. The second time, the house was 90% complete when it was completely destroyed by fire. The insurance proceeds evidently discharged the balance of the debt up to this time. Then, on December 11, 1979, Brett and Mrs. Richter obtained an entirely new construction loan, and executed a new mortgage on the Orba Drive property. From time to time, they renewed this loan in larger amounts.
Mills died August 13, 1980. In November of that year Brett and Mrs. Richter borrowed an additional sum of $35,000.00. Mrs. Richter gave the bank a mortgage on her personal home as collateral for this loan, getting Uhrig to prepare the mortgage for her. Rance Kelly handled this loan on behalf of the bank. On March 11, 1981, this loan and the ones secured by the Orba Drive property were renewed.
In late May 1981, Brett and Mrs. Richter broke off their engagement, and Brett quitclaimed his interest in the Orba Drive property to Mrs. Richter.
Mrs. Richter filed suit against the bank on August 13, 1981. In her complaint she alleged fraud and misrepresentation, a civil conspiracy to defraud, negligence and wantonness, and negligent and wanton entrustment. As the basis for her complaint, she alleged that Mills on two occasions had collected $1,000.00 from her, representing that these payments were for "closing and loan costs," when in fact they were not. She further alleged that she had signed certain notes and mortgages on the representation by Mills that she would not be liable on said notes in case of default, but that her signature was only for the purpose of qualifying the co-signer for the loan. She claimed that Mills was at all times acting within the customary and apparent scope of his authority as an employee *Page 242 
of the bank. In its answer the bank, in addition to denying the allegations, pleaded the statute of limitations, estoppel, and contributory negligence. It also counterclaimed on the two note renewals of March 11, 1981.
On August 20, 1982, the bank filed its motion for summary judgment on the complaint and on the counterclaim, with attached affidavits. In its order granting summary judgment, the trial court stated:
 Plaintiff did not file an opposing affidavit as provided in Rule 56 (e) of the Alabama Rules of Civil Procedure. However, the Court has given due consideration to all of the evidence and matters before it, including the pleadings, requests and responses to requests for production, the entire depositions of the plaintiff, Edna L. Richter, Rube Brett, Sherry Stanners, Beatrice Reagon and Raymond Uhrig, and the arguments and authorities submitted by counsel for both parties. The Court finds that there is no legally competent or admissible evidence to support an inference of a genuine issue as to any material fact to establish any of plaintiff's claims against the defendant. With respect to defendant's counterclaim the Court finds that there is no genuine issue of fact and that the amount of principal and interest due defendant on the two promissory notes is undisputed.
 Accordingly, summary judgment is hereby entered in favor of the defendant Central Bank of the South as to the claims of plaintiff Edna L. Richter against it and also on its counterclaim against plaintiff.
Summary judgment is granted in Alabama only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A.R.Civ.P., Rule 56 (c); Mountain v. Collins, 430 So.2d 430 (Ala. 1983). "Supporting and opposing affidavits . . . shall set forth such facts as would be admissible in evidence. . . ." Rule 56 (e). To defeat a motion for summary judgment, the nonmoving party must present facts that are properly admissible in evidence.Ray v. Montgomery, 399 So.2d 230 (Ala. 1980); Morris v. Morris,366 So.2d 676 (Ala. 1978).
Alabama's "dead man's statute" provides, in pertinent part:
 [N]o person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding or when such deceased person, at the time of such transaction or statement, acted in any representative or fiduciary relation whatsoever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness or has been taken and is on file in the case.
Code 1975, § 12-21-163.
The above statute effectively prevents Mrs. Richter from testifying as to any transaction with or statement by Charlie Mills relating to this case. Therefore, such testimony, being inadmissible at trial, may not be used to defeat a motion for summary judgment. Ray v. Montgomery, supra. See alsoBeddingfield v. Central Bank of Alabama, supra.
On a motion for summary judgment, all reasonable inferences from the facts are viewed most favorably to the non-moving party, and the moving party is required to establish that the other party could not recover under any discernible circumstances. Pittman v. Martin, 429 So.2d 976 (Ala. 1983);Bryant v. Morley, 406 So.2d 394 (Ala. 1981). Viewing the admissible evidence in the instant case in a light most favorable to Mrs. Richter, we have the following: *Page 243 
1. With regard to Mills's actions at the closing, Uhrig testified at his deposition:
 Q. Did Mrs. Richter inquire as to the extent of her liability, or were there some words to that effect with Mr. Mills?
 A. Before signing the mortgage she asked Charlie what — you know, what she was signing away, essentially. Now, those were not her words. I don't recall the exact words. But she was concerned as to what she was signing.
Q. Do you recall what Mr. Mills told her?
 A. He told her that on the mortgage she was signing her interest in the Orba Drive property for collateral for the loan.
. . . .
 Q. Did he make any other representation to her about her liability to any other degree?
 A. Well, she inquired whether her other two pieces of property were involved. Actually, she said her other property, and at a later date I found out that she did own at least two other pieces of property.
 Q. And she asked whether or not they would be involved?
 A. If they were involved or if they were in any manner tied up in this closing, and he replied that they were not, that the mortgage was only for this one piece of property, and, if I recall, it seems like I then affirmed also that this mortgage only concerned one piece of property.
The statements of Mills at the loan closing, as testified to by Uhrig, above, appear from the evidence to have been true statements at the time they were made, and not misrepresentations. Later, Uhrig testified as to a conversation he had with Mrs. Richter subsequent to the closing, and after Mills's death:
 Q. Do you remember what the nature of that conversation was relative to her having to put up more property?
 A. That the bank was requiring more collateral, and that it was her understanding that she would not need to put up any more collateral when she initially signed these.
The evidence shows that when Mrs. Richter was required to furnish additional collateral, after the death of Mills, she and Brett were applying for an additional loan of $35,000.00. This transaction was handled for the bank by Rance Kelly. There are no allegations of wrongdoing on the part of Kelly. In fact, the evidence indicates that Mrs. Richter at this point was fully aware of the extent of her obligation, but proceeded with the loan and mortgage anyway.
2. The only other transaction between Mrs. Richter and Mills which was witnessed by anyone else concerned the delivery by Mrs. Richter of $1,000.00 in cash to Mills on two occasions. Mrs. Richter's daughter, Sherry Stanners, stated in her deposition that in December of 1979 she accompanied her mother to Mills's office. She said her mother handed him an envelope containing $1,000.00 cash and, "[S]he said something in essence, I am not quoting, but in essence, this is the money that you needed for fees." She said that they were there only a few minutes, and that she "didn't pay that much attention to the conversation," and could recall nothing specifically that her mother or Mills said.
Mrs. Stanners stated that in March of 1980 she again accompanied her mother to Mills's office, this time in the company of Beatrice Reagon. She said that she brought her mother $800.00 which she owed her, having borrowed that amount for repair work on her car. Her mother, according to Mrs. Stanners, added to it $200.00 and placed it in an envelope. Mrs. Stanners said that when they got to Mills's office she and Mrs. Reagon stood at the door, talking, while her mother and Mills "transacted whatever business they had." She did not overhear any conversation on this occasion, but did see her mother hand the envelope to Mills.
Beatrice Reagon has been a friend of Mrs. Richter since 1965. In her deposition she recalled that in late March 1980, she accompanied Mrs. Richter and her daughter to Mills's office. She did not recall to *Page 244 
which branch of the bank they went. She did not know Mills, and did not go into the office. She and Mrs. Stanners waited outside the door. When asked if she heard any conversation, she answered:
 A. Not really; I heard [Mrs. Richter] say something about here's the money for the renewal or something — fees or something and that was about it.
She did not remember what Mills answered. "I never did pay any attention to him. It was none of my business."
Mrs. Reagon stated that she saw Mrs. Richter hand Mills the envelope containing the money. She said there were no papers signed while they were there. There is no evidence that Mrs. Richter was given a receipt on either occasion.
The foregoing testimony, without more, is not evidence of fraud or misrepresentation by Mills, nor of any other of the allegations of the complaint. Because of Mills's death, Mrs. Richter is barred by the dead man's statute from offering further details or explanation of her transactions with Mills, and without them, her evidence fails.
3. As to the bank's counterclaim, the two notes on which the bank based its claim were both executed after Mills's death, and the admissible evidence shows that Mrs. Richter understood the extent of her obligation when she executed them. There is no allegation of any wrongdoing on the part of any bank employee in connection with these notes. There is no allegation that Mrs. Richter did not receive the benefit of the loans. Without evidence of fraud on the part of Mills which might in some way taint these loan renewals, the bank is entitled to a judgment as a matter of law.
For all the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.