James Enoch was injured on October 18, 1983, when the rim assembly upon which he was inflating a tire exploded. He and Brenda Enoch[1] sued The Firestone Tire Rubber Company ("Firestone"), The Goodyear Tire Rubber Company ("Goodyear"), and Ford Motor Company ("Ford") for breach of warranty, negligence, and defective design of the truck rim under the Alabama Extended Manufacturer's Liability Doctrine. The trial court granted summary judgment as to all defendants, and Enoch appealed.
The dispositive issue is whether Enoch presented a scintilla of evidence that Firestone or Goodyear manufactured the rim assembly involved in the accident and evidence that Ford distributed that particular rim assembly. *Page 267 
At the time of the accident, Enoch was a mechanic working for Sammy and Roy Dobbins. Enoch routinely checked fluids, changed tires, and generally serviced trucks owned by Roy that hauled coal for the Jackson County Mining Company. He normally did this work in a maintenance shop Sammy owned; however, on the date of the accident, Enoch was changing a tire at a service station owned by Roy. Carl Shrader, a contract driver who occasionally worked for Sammy, arrived at the service station just after the tire exploded. He found the two-piece tubeless tire and tube-type rim lying on the ground and took it back to the maintenance shop, where he left it. He testified in his deposition that the tire Enoch was using required a tube-less-type rim rather than the tube-type rim that exploded. At the maintenance shop, Shrader got a tubeless-type rim and put it on the truck on which Enoch had been working.
When asked in his deposition of the whereabouts of the rim that exploded, Shrader testified:
 "Q. All right. Let me see if I have got it. You brought the rim that you found at the accident scene back down here to the maintenance shop?
"A. Right.
 "Q. And from this maintenance shop, you took a different rim back to the accident scene, right?
"A. Right.
 "Q. And you yourself put a tubeless rim on this tire [sic]?
"A. Yes.
 "Q. And this rim you brought down to the maintenance shop, what was done with it?
 "A. We brought it in here, and in a period of four or five months it was put on another truck because we had ten and fifteen flats a day. So it was mounted on another truck and used.
". . . .
 "Q. You don't know the name brand in particular of that two-piece rim that James Enoch was working on?
"A. No.
 "Q. Now, you mentioned it was put on another truck, probably. Is that what you said?
"A. Yes.
"Q. Do you know that for sure?
"A. I would bet ninety-nine percent it was. . . .
". . . .
 "Q. Have you ever showed that two-piece rim —
"A. No.
"Q. — to James Enoch after the accident?
"A. No.
 "Q. Have you ever showed it to anybody who was hired by James Enoch after the accident?
"A. No.
 "Q. Did you ever show it to anybody that was asking about the accident?
"A. No."
Shrader was asked if he could possibly trace the rim from the time that he took it to the maintenance shop to where it is now:
 "Q. After you — are you the person who actually put the wheel from the service station in that stack of wheels?
"A. Me and my brother-in-law.
". . . .
 "Q. After putting it in there, did, at some point, other wheels get tossed in there to your knowledge?
 "A. In where I brought this other wheel back and put there?
"Q. Yes, sir.
"A. I'm sure they did.
 "Q. And it was in a stack of fifteen or twenty wheels?
"A. Yeah, uh-huh.
 "Q. Now, do you know of any way in the world that you could determine what happened to that wheel that you put in that stack?
"A. No. *Page 268 
". . . .
 "Q. Is there any way you could keep track of or know what truck the rim was placed on after the accident?
"A. No."
 I
According to Enoch's deposition testimony, about six weeks after his accident Shrader showed him the rim at a lime shed near Sammy Dobbins's shop:
"Q. Have you seen the tire since the accident?
"A. No, sir.
"Q. Up until today?
"A. No, sir.
"Q. Have you seen any pictures of it?
"A. No.
"Q. Do you know where it is?
"A. No, sir.
"Q. What about the rim?
"A. Yes, I have seen the rim.
"Q. Do you know where it is?
 "A. It was up there behind Sammy Dobbins' lime shed. They had it stacked out there when they was repairing the roof on the other building, the blocks and stuff.
"Q. The lime shed?
 "A. He has got an old shed there that he kept lime in.
"Q. And he had this rim just out behind it?
"A. Yes, sir.
"Q. When did you last see it?
 "A. I don't remember. It has been a pretty good while.
 "Q. Okay. Do you know whether they put that rim or some other rim back on the truck after you got hurt?
"A. No, sir.
 "Q. Who told you that was the rim from the time when you got hurt that Sammy had out there?
"A. Carl Shrader.
"Q. Who did?
"A. Carl Shrader.
"Q. Who is Carl Shrader?
 "A. He is the guy that is over the trucks now to see that they get serviced and stuff. He used to do — he used to be, I guess you would call him foreman.
". . . .
 "Q. What did Mr. Shrader say to you on that occasion?
 "A. I asked him was that the rim that blowed up on me and he said it was.
"Q. All right. And this was out behind —
"A. He said sitting out behind the lime shed.
"Q. Did he say anything else to you at that time?
"A. No, sir."
Enoch testified that several days after the alleged conversation with Shrader, he pointed out to his attorney's investigator the rim that Shrader supposedly identified to Enoch:
"Q. Did you take the rim?
"A. I didn't.
 "Q. Did the representative of the people that were handling your lawsuit take the rim?
"A. I don't know.
"Q. Where did it go?
"A. I don't know.
"Q. What happened to it?
"A. That is the last I seen of it.
 "Q. What happened to the rim there that morning when you were standing there at Mr. Dobbins' shop?
"A. It was still there.
"Q. And you showed him where it was?
"A. Right.
"Q. Then what happened to it?
"A. I don't know.
"Q. Did ya'll load it up?
"A. No, sir, I didn't.
"Q. What happened to the rim?
"A. I don't know. I left."
Depositions and affidavits must be admissible under the rules of evidence in *Page 269 
order to be considered in opposition to a motion for summary judgment. Ray v. Montgomery, 399 So.2d 230 (Ala. 1980). The conversation with Shrader regarding the identity of the rim is clearly hearsay testimony, as it is offered for the truth of the matter asserted; it would be inadmissible at trial for that purpose. Enoch cites C. Gamble, McElroy's Alabama Evidence § 273.01 (3d ed. 1977), for the exception to the hearsay rule:
 "A statement which is useful in identifying a person, time, place or other thing is admissible for that purpose as a hearsay exception. The statement, of course, may not be considered as evidence of the truth of the matter asserted but only for the limited purpose of identification." (Emphasis added.)
A similar proposition was rejected in Thomas v.State, 461 So.2d 16 (Ala. 1984), regarding the statement of two police officers that the victim, Watson, had identified the defendant in a lineup. Watson neither identified the defendant at trial nor testified that he had identified the defendant in a lineup.
 "This was the equivalent of allowing the officers to testify that 'Watson said Thomas is the thief.' Without question, that statement was admitted for a hearsay purpose, as evidence of 'the truth of the matter asserted,' i.e., that Watson's identification was the truth, and thus as substantive evidence that Thomas was the thief.
". . . .
 " 'The testimony of a third person has generally been treated as inadmissible as original or substantive evidence as to the identity of the accused as the guilty party.' "
461 So.2d at 20, 21. (Citation omitted.)
Because Shrader denied in his deposition having shown the rim to Enoch or anyone else, the identification of the rim as the one that exploded would rest on Enoch's hearsay statement. As in Thomas, such a statement may not be used as substantive evidence of the identity of the rim because the only purpose the statement would serve would be to prove the truth of the very assertion it makes.
 II
Enoch was asked at his deposition on November 2, 1984, about the basis of his knowledge that the rim in question was the one that exploded:
 "Q . . . . I want to ask you if there is anything about the rim as you were looking at [it] on the day of your accident that would be some identifying mark or color or anything on that that would allow you independent of what Mr. Shrader said to you to identify the one that you said he showed you as being that rim?
"A. No, sir, I can't say there are.
 "Q. So, if I understand your testimony the only reason that you say that the rim which you later pointed out to a representative of your law firm that is handling this case, that, 'this is the rim' is based entirely on what Mr. Shrader had said to you?
"A. Yes, sir."
On April 28, 1987, Enoch submitted an affidavit in which he stated:
 "Since my deposition was taken on November 2, 1984, I have made a closer examination of the rim base and ring presently in the possession of my attorney. In my judgment the rim base and ring which I examined are the same rim base and ring which I was assembling on October 18, 1983. I base this on several identification marks on the rim base and ring which I examined that are identical to marks on the rim base and ring I was assembling on said date."
In Lady Corrine Trawlers, Inc. v. Zurich Ins. Co.,507 So.2d 915 (Ala. 1987), we adopted the reasoning ofVan T. Junkins Assoc. v. U.S. Industries,736 F.2d 656 (11th Cir. 1984), which held that on a motion for summary judgment, a party may not create an issue of fact "with an affidavit that merely contradicts without explanation, previously clear testimony." 736 F.2d at 657. Likewise, the contradiction between Enoch's affidavit and his *Page 270 
deposition testimony cannot defeat a motion for summary judgment when no basis or explanation is given for that contradiction other than recollection three years later.
 III
Finally, Enoch submitted the affidavit of Donald Gibson, an engineering consultant from Columbia, Missouri, dated July 29, 1986, in which Gibson states:
 "From these data it is my opinion that the LW rim components supplied to me by attorney Robert B. Roden were involved in an explosive separation."
This statement alone still does not provide a scintilla of evidence that the rim he examined was the one involved in the accident. There is no evidence that the rim in the possession of Enoch's attorney was the one that exploded. Without concrete facts establishing that the rim that exploded on October 18, 1983, was one manufactured by Firestone or Goodyear, there is also no evidence that Ford sold or distributed the rim involved in the accident. Summary judgment was appropriate as to all defendants.
AFFIRMED.
TORBERT, C.J., and SHORES, ADAMS and HOUSTON, JJ., concur.
[1] Brenda Enoch sued for the medical expenses and loss of services of her husband; however, because her claims are derivative, all references in the opinion are to James Enoch.