[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1293 
The Commercial Bank sued Power Equipment Company, Inc., claiming that Power Equipment had defaulted on two promissory notes. The first note, which The Commercial Bank claimed had an outstanding balance of $20,250 when the suit was filed, evidenced a loan made to Power Equipment in June 1985 to enable it to purchase a forklift to be used in its business operations. The second note, executed in August 1985, represented a $900,000 line of credit that was to be used by Power Equipment to purchase an inventory of heavy equipment.
In addition to filing an answer to The Commercial Bank's complaint, Power Equipment filed a counterclaim against The Commercial Bank and filed a third-party complaint against First Alabama Bank (The Commercial Bank's successor following a merger) and First Alabama Bancshares, the sole shareholder of the successor bank. (We will refer to The Commercial Bank, First Alabama Bank, and First Alabama Bancshares collectively as "the Bank.") In its counterclaim and third-party complaint, Power Equipment alleged that the Bank was liable to it on the following theories: breach of contract; breach of duty of good faith; breach of fiduciary duty; fraud; conversion; wrongful disclosure of financial information; and racketeering.
The Bank filed a motion for summary judgment on its claims against Power Equipment and on Power Equipment's counterclaim and third-party complaint against the Bank. The trial court entered a summary judgment for the Bank in the amount of $1,117,886.84. The trial court also dismissed Power Equipment's counterclaim and third-party complaint with prejudice. Power Equipment appealed.
The record in this case reveals the following pertinent details: In 1981, Power Equipment, a business involved in the retail sale of heavy equipment used in the timber industry, began a banking relationship with the Bank. The Bank extended a line of credit to Power Equipment, which was secured by Power Equipment's inventory. The line of credit enabled Power Equipment to purchase pieces of heavy equipment for eventual sale to the public. When a piece of equipment was purchased, the amount borrowed was put on an individual note at the Bank and was added to the total amount owed under the line of credit. As Power Equipment sold each individual piece of equipment, the proceeds from the sale were paid to the Bank, the individual note corresponding to that piece of equipment was marked as having been "satisfied," and the balance on the line of credit was reduced accordingly.
In the summer of 1985, there was a change in the ownership and management of the Bank. Thereafter, Robert Ferguson, Power Equipment's president, met with Lynn Mosley, a loan officer in the new management at the Bank, to discuss the reorganization of Power Equipment's debts. The new management of the Bank preferred to carry one master "floor plan" financing agreement rather than individual notes on each piece of Power Equipment's inventory. The talks culminated in August 1985, with Power Equipment's execution of a promissory note in the amount of $900,000. The note gave the Bank a security interest in all of Power Equipment's then-existing and after-acquired inventory, machinery, and equipment. In addition to consolidating Power Equipment's individual notes, the $900,000 line of credit allowed Power Equipment to purchase new inventory. *Page 1294 
By January 1986, Power Equipment's debt on the line of credit was approximately $846,000.
In January 1986, Ferguson met with officials of the Bank regarding Power Equipment's debt. At that time, the Bank requested that Power Equipment begin making payments of approximately $48,000 per month toward repayment of the debt owed on the line of credit. According to this plan, Power Equipment's debts would be fully paid by July 1987. Power Equipment paid the $48,000 monthly payments for two or three months and then became unable to continue making those payments. The Bank then sued Power Equipment, contending that Power Equipment had defaulted both on the note securing the $900,000 line of credit and on the note securing a $20,000 loan that the Bank had made to Power Equipment for the purpose of purchasing the forklift that Power Equipment used in its business operations.
The issues raised in this appeal are whether Power Equipment's counterclaim and third-party complaint were properly dismissed and whether the summary judgment for the Bank was proper on its original complaint against Power Equipment. After carefully considering Power Equipment's counterclaim and third-party complaint against the Bank and the claims made by the Bank against Power Equipment, we conclude that the trial court correctly entered the summary judgment and dismissal in this case.
Initially, we note that although the trial court characterized its ruling on Power Equipment's counterclaim and third-party complaint as a dismissal, the court considered matters outside the pleadings; therefore, we will consider the ruling on the counterclaim and third-party complaint to be a summary judgment. Rules 12(c) and 56, A.R.Civ.P.; George v.Federal Land Bank of Jackson, 501 So.2d 432 (Ala. 1986).
Summary judgment is proper only in cases where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v. First Alabama Bank,540 So.2d 732 (Ala. 1989). The burden is upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmovant. Southern Guar. Ins. Co., supra.
Furthermore, because this case was pending on June 11, 1987, see § 12-21-12, Ala. Code 1975, the "scintilla rule" applies, requiring that summary judgment not be granted if there exists a scintilla of evidence to support the position of the nonmovant. Browning v. Birmingham News, 348 So.2d 455 (Ala. 1977). The scintilla rule requires only that the record furnish a mere gleam, glimmer, spark, i.e., the least bit or the smallest trace of evidence in support of the nonmovant to defeat a summary judgment motion. Watkins v. St. Paul Fire Marine Ins. Co., 376 So.2d 660 (Ala. 1979).
 I.
The first issue raised is whether the trial court erred in dismissing Power Equipment's counterclaim and third-party complaint against the Bank. The first argument by Power Equipment is that the Bank breached the terms of the loan contract that it had entered into with Power Equipment. Specifically, Power Equipment argues that the Bank promised to extend up to $900,000 to Power Equipment for use in purchasing inventory for as long as Power Equipment properly performed under the agreement and that the Bank promised to renew the note on a yearly basis when the note matured on August 28, 1986. Power Equipment contends that the Bank breached this alleged promise in January 1986 by refusing to continue the line of credit as promised and by imposing the requirement that Power Equipment reduce the balance on its line of credit by $48,000 per month. In opposition to the Bank's summary judgment motion, Power Equipment submitted the affidavit and deposition of its president, Robert Ferguson, which it contends provide more than a scintilla of evidence that the Bank breached the loan contract. *Page 1295 
Arguing that the trial court properly entered summary judgment as to the breach of contract claim, the Bank initially contends that the affidavit and deposition statements of Ferguson, to the extent that they refer to conversations with loan officer Lynn Mosley, violate § 12-21-163, Ala. Code 1975, the so-called "Dead Man's Statute," because Mosley was deceased when the summary judgment motion and the supporting affidavit and deposition were filed. The Bank objected to and moved to strike the portions of the affidavit and deposition referring to conversations between Ferguson and Mosley.
Section 12-21-163 provides in pertinent part:
 "In civil actions and proceedings . . . no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, [a] deceased person . . . when such deceased person, at the time of such transaction or statement, acted in any representative . . . relation whatsoever to the party against whom such testimony is sought to be introduced. . . ." (Emphasis added.)
It is well-established that the Dead Man's Statute operates to exclude testimony regarding statements by deceased officers of defendant business entities. See Richter v. Central Bank ofAlabama, N.A., 451 So.2d 239 (Ala. 1984). In reiterating this point, Justice Almon recently stated:
 "[T]his Court has recognized that the very language of the Dead Man's Statute requires the exclusion of testimony regarding an officer or representative's statements if that officer is now deceased and was acting in his representative capacity at the time the alleged statement was made, notwithstanding the fact that the officer's estate will not be affected by the suit:
 " '[T]he statute . . . makes such testimony incompetent, though the estate of the deceased person is not interested in the result of the suit, if he acted in a representative or fiduciary relation to the party against whom such testimony is offered.'
 ". . . Benson Co. v. Foreman, 241 Ala. 193, 195, 1 So.2d 898, 899 (1941). . . ."
Moseley v. Lewis Brackin, 583 So.2d 1297, 1299 (Ala. 1991).
Power Equipment does not dispute the assertion that Mosley was acting in his capacity as a loan officer with the Bank when he allegedly made the statements referred to by Ferguson. Rather, Power Equipment contends that the Dead Man's Statute is inapplicable because, it argues, the Bank did not introduce sufficient evidence to prove that Mosley was deceased. Power Equipment also contends, citing Melvin v. Parker,472 So.2d 1024 (Ala. 1985), that the statements should have been considered by the trial court, because, it argues, the statements fall within the "associate" exception to the Dead Man's Statute.
In the affidavit of Guy H. Wilkes, Jr., a vice president of the Bank, which was filed by the Bank in support of its summary judgment motion, Wilkes specifically states that "Lynn Mosley . . . is now deceased." Although Power Equipment presented no evidence to the contrary, it contends in its brief on appeal that "[t]his assertion by Wilkes was undoubtedly secondhand knowledge based on hearsay." We note however: "The general reputation among friends or acquaintances of a person, claimed to be dead, that he is dead is admissible as tending to prove his death. . . ." C. Gamble, McElroy's Alabama Evidence § 250.04(2) (4th ed. 1991). Furthermore, the record reveals neither a motion to strike Wilkes's affidavit nor any evidence suggesting that Wilkes lacked firsthand knowledge of Mosley's death. Therefore, we find no merit in Power Equipment's argument that the Dead Man's Statute is inapplicable.
Power Equipment's second argument with regard to the Dead Man's Statute is that Ferguson's statements should have been admitted as an "associate" exception to the general rule of exclusion. Power Equipment argues that Wilkes was *Page 1296 
an associate of Mosley and that the alleged promises were made in Wilkes's presence. However, Wilkes stated in his affidavit that Mosley handled all of the negotiations with Power Equipment regarding the loan at issue and that he was not present during all of their discussions. He also stated that he was not present during any discussion wherein Mosley told Ferguson that loans or credit would be advanced under the note past December 31, 1985. Furthermore, in his deposition, Wilkes testified that although he was present for some time during each of Mosley's meetings with Ferguson, he was not there every minute of the time.
In order for the "associate" exception to the Dead Man's Statute to be applicable, Wilkes would have to have been associated with Mosley in one of the capacities set forth inMelvin v. Parker, supra, e.g., joint owner, partner, spouse, son-in-law, or agent. Here, there is no evidence that Wilkes was associated with Mosley in any of those capacities. Furthermore, in Melvin, this Court made it clear that for the associate exception to apply, the person allegedly present and "associated" with the decedent must be someone whom "we may safely rely upon to give the decedent's version of the transaction." 472 So.2d at 1030.
Here, Power Equipment has presented no evidence that Wilkes was present during all of the alleged discussions upon which Power Equipment bases its breach of contract claim. Because Wilkes was not present during all of the alleged discussions, he cannot safely be relied upon to give the decedent's version of the transaction. Therefore, we conclude that the "associate" exception to the Dead Man's Statute does not apply.
Disregarding the references in Ferguson's deposition and affidavit to statements allegedly made by Mosley to Ferguson, we find that Power Equipment failed to present the scintilla of evidence needed to defeat the Bank's motion for summary judgment with regard to Power Equipment's breach of contract counterclaim. Even if the promises alleged by Power Equipment had been made, the Bank's January 1986 request that payments be made on the indebtedness would not constitute a breach, because the evidence shows that the promissory note contained a clause that allowed the bank to demand the entire payment of the debt at any time. See Pavco Industries, Inc. v. First National Bankof Mobile, 534 So.2d 572 (Ala. 1988). Obviously, if a promissory note contains a demand provision, the creditor has the right to request or allow incremental payments.
Although Power Equipment in its brief disputes the assertion that the note evidencing the $900,000 line of credit contained a demand provision, it attached a copy of the note to its counterclaim and third-party complaint and alleged that the copy was a true and correct copy of the note in question. That copy contains a demand provision. Moreover, in its answers to interrogatories, Power Equipment stated that the line of credit "was evidenced by a $900,000 one (1) year demand note." Therefore, Power Equipment may not, on appeal, dispute the validity of the demand provision in the note.
Power Equipment also argues that the demand feature in the note should have been specifically brought to Ferguson's attention before he signed the note. However, Ferguson, who is on the board of directors of another bank and is a member of that bank's loan committee, admits that he had the opportunity to read the note in question before he signed it, but that he failed to do so. The law is clear that in the absence of fraud or misrepresentation a party is bound by the terms of a contract, even if he fails to read it. See Medley v. SouthTrustBank of the Quad Cities, 500 So.2d 1075 (Ala. 1986). The law is equally clear that ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby. Massey v.Ingram, 567 So.2d 1272 (Ala. 1990); Norman v. Amoco Oil Co.,558 So.2d 903 (Ala. 1990).
In light of the above, we conclude that the trial court properly entered the summary *Page 1297 
judgment as to Power Equipment's allegation of breach of contract by the Bank.
Power Equipment, in the second allegation of its counterclaim and third-party complaint, contends that the Bank "breached the obligation of good faith owed by [the bank] under the Uniform Commercial Code" by failing to comply with the terms of the note.
Section 7-1-203, Ala. Code 1975, provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." However, inPavco Industries, Inc. v. First National Bank of Mobile,534 So.2d 572 (Ala. 1988), this Court concluded that this provision does not apply to demand instruments, holding that § 7-1-208 superseded any general good faith duty imposed under § 7-1-203, and, thus, that the U.C.C. does not impose a good faith requirement on the right to demand payment under a note.
Power Equipment, in its brief on appeal, also contends that the bank breached an obligation of good faith imposed by the "common law." However, this claim was foreclosed byGovernment Street Lumber Co. v. AmSouth Bank, 553 So.2d 68
(Ala. 1989), in which this Court refused to allow an action based on such a theory in tort or in contract. Furthermore, a "bad faith" cause of action, except in the context of a contract for insurance, is not a cognizable cause of action.Keeton v. Bank of Red Bay, 466 So.2d 937 (Ala. 1985). Therefore, we hold that the summary judgment was proper as to Power Equipment's claim of a breach of a duty of good faith.
The third allegation in Power Equipment's counterclaim and third-party complaint is that the Bank failed to comply with the terms of the note and thereby breached a fiduciary duty owed by the Bank to Power Equipment.
Power Equipment concedes that ordinarily no fiduciary or confidential relationship exists between a debtor and a creditor. Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank.See Faith, Hope Love, Inc. v. First Alabama Bank of TalladegaCounty, N.A., 496 So.2d 708 (Ala. 1986). However, a fiduciary duty may arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances. Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984).
Here, Power Equipment does not allege that it relied on the Bank for financial advice, so as to create a fiduciary duty. Rather, Power Equipment argues that "other special circumstances" exist that operated to create a fiduciary relationship between the Bank and Power Equipment. The act that Power Equipment alleges created a fiduciary relationship in this case is the wrongful diversion by a former officer of the Bank, using the names of Ferguson and Power Equipment, of $700,000 to himself and others. Power Equipment states that
 "[t]hese criminal acts caused the loans of Robert Ferguson and Power Equipment Company, not only at the Commercial Bank, but at every other bank in the area, to be classified by the FDIC and virtually destroyed Power Equipment's chances of obtaining further credit."
In Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985), a fiduciary or confidential relationship was defined:
 " '[Such a relationship is one in which] one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It *Page 1298 
arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.'
"15 C.J.S. Confidential (1967)."
482 So.2d at 284. Although this Court has previously held that "other special circumstances" may create a fiduciary relationship, those circumstances have never been defined. However, the factors asserted by Power Equipment as having created a fiduciary relationship in this case are clearly not sufficient to support the inference that a fiduciary relationship existed.
In essence, Power Equipment argues that one of the Bank's former officers was guilty of wrongdoing and that that fact gave rise to a fiduciary relationship. However, it is undisputed that Ferguson knew of the wrongful acts by the Bank's officer before he signed the note evidencing the $900,000 line of credit. If anything, this prior knowledge of wrongdoing should have caused distrust on the part of Power Equipment, not the confidence and reliance that is the cornerstone of a fiduciary relationship. Furthermore, Power Equipment's allegation that the FDIC had come in and "cleaned house" and that the Bank was under new management would certainly not have the effect of elevating the Bank to the level of a fiduciary in its relationship with Power Equipment. Therefore, we hold that the trial court properly entered summary judgment as to Power Equipment's claim of breach of a fiduciary relationship by the Bank.
The fourth claim asserted by Power Equipment in its counterclaim and its third-party complaint is that the Bank made fraudulent misrepresentations and fraudulently suppressed material information. In its claims of fraudulent misrepresentation, Power Equipment argues that the Bank represented to Ferguson, before he signed the note securing the $900,000 line of credit, that the Bank wanted to continue "floor planning" Power Equipment's business and that it would allow Power Equipment to keep a line of credit of up to $900,000 at the Bank so long as Power Equipment continued to perform under the note evidencing the line of credit as it had on other notes in the past.
Initially, we note that, as discussed above, the admission of the references in Ferguson's affidavit and depositions to statements made to him by loan officer Lynn Mosley would violate the Dead Man's Statute and therefore those references could not properly be used by Power Equipment in its attempts to defeat the Bank's summary judgment motion.
However, even if those statements were taken into consideration, the trial court could have properly dismissed Power Equipment's misrepresentation claim, because Power Equipment's allegations of misrepresentation are contradicted by Ferguson's own deposition testimony, wherein he admitted that no one ever told him how long the line of credit would be extended. Therefore, we conclude that Power Equipment failed to rebut the Bank's prima facie showing that it did not misrepresent facts related to the line of credit loan to Power Equipment. Because there was no evidence of misrepresentation, the summary judgment was due. See Bice v. Indurall ChemicalCoating Systems, Inc., 544 So.2d 948 (Ala. 1989).
In addition to alleging fraudulent misrepresentation, Power Equipment also claims fraudulent suppression by the Bank, contending that the Bank failed to inform Power Equipment of its intention to cancel the line of credit at the end of 1985. Power Equipment acknowledges that in order to succeed on its fraudulent suppression claim, it must show that the Bank intentionally suppressed facts that it was under a duty to disclose. However, after reviewing the record, we find that Power Equipment, in its attempt to defeat the Bank's summary judgment motion, failed to present sufficient evidence of a suppression of facts.
In his affidavit in opposition to the Bank's summary judgment motion, Ferguson stated emphatically: "At no time prior to my signing the $900,000 note was it ever discussed, mentioned or hinted that the Commercial Bank no longer wanted to do *Page 1299 
business with Power Equipment." However, this statement in Ferguson's affidavit contradicted his prior deposition testimony, wherein he stated that he did not recall whether any discussions about moving the line of credit to another bank took place prior to his signing of the note in question. A party may not create an issue of fact with an affidavit that merely contradicts that party's previous testimony without explanation. Enoch v. Firestone Tire Rubber Co.,534 So.2d 266 (Ala. 1988). Therefore, even if the Bank intended to discontinue Power Equipment's line of credit at the end of 1985 and even if the Bank was under a duty to disclose that fact, Power Equipment has failed to offer proper evidence that the Bank did not disclose that fact to Power Equipment.
In its fifth claim against the Bank, Power Equipment alleges wrongful disclosure of confidential financial information. Power Equipment cites two instances of allegedly wrongful disclosure. First, Power Equipment cites the affidavit of Emmett Travis, a Power Equipment customer, wherein he states that he was told by an officer of the Bank that the officer and other bank officials thought that "Bob Ferguson, and other people at Power Equipment were directly involved with John Earl Duggan in the wrongdoing at The Commercial Bank." However, even if this statement from Travis's affidavit is regarded as a fact, it would not give Power Equipment a cause of action.
A corporation is a distinct entity, to be considered separate and apart from the individuals who compose it. Messick v.Moring, 514 So.2d 892 (Ala. 1987). Furthermore, a corporation, just as an individual, must enforce its own rights and privileges. Russell v. Birmingham Oxygen Service, Inc.,408 So.2d 90 (Ala. 1981). Here, the information that Power Equipment alleges was wrongfully disclosed to Travis does not relate to Power Equipment, but rather to Ferguson and others affiliated with Power Equipment in their individual capacities. Therefore, the disclosure of that information cannot properly serve as the basis of a wrongful disclosure claim by Power Equipment against the Bank.
Second, Power Equipment refers in its brief to two memoranda from Credit Alliance Company that supposedly reflect disclosures by the Bank to Credit Alliance in February 1986. However, in submitting the documents to the trial court, Power Equipment did not attempt to comply with Rule 56(e), A.R.Civ.P., which requires that written documents submitted in connection with a summary judgment motion be certified or otherwise authenticated. The documents, therefore, constitute inadmissible hearsay and could not properly be considered on summary judgment. See Murray v. Timberlake, 564 So.2d 885 (Ala. 1990).
Because Power Equipment failed to present any admissible evidence that the Bank disclosed confidential financial information regarding Power Equipment, we conclude that the summary judgment was proper as to this claim.
Power Equipment, in its sixth claim against the Bank alleges that the Bank's seizure of certain pieces of Power Equipment's inventory securing the Bank's loans to Power Equipment constituted conversion. The August 28, 1985, promissory note securing the $900,000 line of credit gave the bank a security interest in Power Equipment's inventory. Pursuant to § 7-9-503, Ala. Code 1975, a secured party, such as the Bank in this case, has, on default, the right to take possession of the collateral and to do so without judicial process.
Ferguson admitted in his deposition that the note was in default on August 28, 1986. Therefore, the seizure of the inventory after the default was not wrongful and cannot support an action for conversion. See Ash v. Peoples Bank ofGreensboro, 500 So.2d 5 (Ala. 1986). Although Power Equipment contends that its default was induced by an earlier breach of the loan contract by the Bank, we have concluded above that there had been no breach by the Bank. Therefore, we hold that the summary judgment was proper as to Power Equipment's claim of conversion. *Page 1300 
The seventh claim made by Power Equipment in its counterclaim and third-party complaint is racketeering, as defined by the Racketeer Influenced and Corrupt Organizations Act ("RICO"),18 U.S.C. § 1961 et seq. RICO provides a civil right of action for damages suffered as a result of "racketeering activity," which is defined, in pertinent part, as an act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs chargeable under state criminal laws and punishable by imprisonment for more than one year, or an act indictable under specific federal criminal provisions, including mail fraud and wire fraud. 18 U.S.C. § 1961(1). Thus, in order to establish liability, a claimant must prove that the defendant committed one of these "predicate acts." See Sedima,S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3275,87 L.Ed.2d 346 (1985).
With regard to the RICO claim, the Bank, citing ChivasProducts Ltd. v. Owen, 864 F.2d 1280 (6th Cir. 1988), argued in its brief in support of its motion for summary judgment that the federal courts have exclusive jurisdiction over such claims. Power Equipment, on the other hand, cites Lou v.Belzberg, 834 F.2d 730 (9th Cir. 1987), cert. denied,485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988), for the proposition that state and federal courts have concurrent jurisdiction in RICO cases. However, assuming, without deciding, that jurisdiction on the RICO claim was proper with the trial court, we still find no error by the trial court in entering a summary judgment as to that claim.
In its brief, the only act cited by Power Equipment that could be considered a predicate act is that the Bank "used telephonic communications to disseminate false and misleading information about Power Equipment to Credit Alliance." However, to constitute wire fraud, RICO requires that the wire communications cross state lines. See 18 U.S.C. § 1343; Smithv. Ayres, 845 F.2d 1360 (5th Cir. 1988). Here, Power Equipment, in response to the Bank's motion for summary judgment, presented no evidence showing that interstate telephone communications took place. Therefore, we hold that the trial court properly entered the summary judgment for the Bank on Power Equipment's RICO claim.
 II.
The second issue raised on appeal is whether the court properly entered the summary judgment in favor of the Bank on its claims against Power Equipment asserted in its original complaint. The first count of the complaint was for recovery on the June 1985 promissory note, while the second count was for recovery on the August 1985 promissory note evidencing the $900,000 line of credit.
With regard to both the June 1985 note and the August 1985 note, Power Equipment admits executing the notes. However, Power Equipment sets out the affirmative defenses of breach of contract, payment, accord and satisfaction, fraud, duress, failure of consideration, waiver, statute of limitations, and laches. Power Equipment contends that the same evidence that supports its counterclaim and third-party complaint also supports its defenses to the Bank's original complaint.
As discussed in Part I of this opinion, Power Equipment failed to offer evidence that the Bank breached any of the terms of the August 1985 promissory note, and there is no evidence that a breach was committed by the Bank with regard to the June 1985 note. Also, there is no evidence that the Bank committed fraud relating to the notes, that the consideration for the notes failed, or that the debt evidenced by either of the notes has been fully paid. Furthermore, there is no evidence of accord and satisfaction, waiver, or laches, and it is clear that the lawsuit was filed within the statutory period of limitations. Finally, there is no evidence of fraud or duress in connection with the execution of either of the notes. Power Equipment has failed to rebut the Bank's prima facie showing that it was entitled to a judgment on the notes. Therefore, we hold that the summary judgment was properly entered for the Bank on *Page 1301 
its original complaint against Power Equipment.
Therefore, the judgment is due to be affirmed, both as to the Bank's original complaint against Power Equipment and as to Power Equipment's counterclaim and third-party complaint against the Bank.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.