K C Development Corporation ("K C") and Victor Kyatt, individually and as president, majority shareholder, and director of K C, sued AmSouth Bank, N.A. ("the Bank"), and Clarence E. Castleberry, who was the vice president and minority shareholder of K C. The complaint alleged breach of a contract under seal, wrongful foreclosure, conversion, fraud, breach of fiduciary duty, unjust enrichment, civil conspiracy, and interference with business relationships. The complaint also sought to quiet title to a certain parcel of real property and to impose a constructive trust. The complaint further requested an accounting both from Castleberry and from the Bank and was later amended to also include a claim for wrongful set-off. Subsequently, K C and Kyatt moved to dismiss their claims against Castleberry, because Castleberry was then in bankruptcy. The trial court granted the motion.
After answering the complaint, the Bank moved for a summary judgment, alleging, among other things, that the claims in the complaint were barred by the applicable statutes of limitation. The Bank supported its motion with certain deposition testimony and with the affidavit of James J. Stahl, a senior vice president of the Bank. After extensive briefing and argument by the parties, the trial court entered a summary judgment for the Bank and against K C and Kyatt on all counts in the complaint stating a cause of action against the Bank. K C and Kyatt appealed.
On appeal, K C and Kyatt raise two issues: 1) whether the contract made the basis of K C and Kyatt's breach of contract claim is a sealed contract and, thus, subject to a 10-year statute of limitations; and 2) whether K C and Kyatt's fraud and misrepresentation claims are *Page 673 
barred by the applicable statute of limitations.[1]
The evidence before the trial court when the summary judgment was entered is as follows: K C was incorporated in October 1977 by Kyatt and Castleberry, with ownership held in a ratio of 60 percent (Kyatt) to 40 percent (Castleberry). Kyatt served as the president of K C, while Castleberry served as vice president and secretary. K C's purpose was to develop the third sector of a Shelby County subdivision known as Southern Pines and to ultimately sell the lots in the subdivision to builders.
In 1977, the Bank agreed to loan K C $211,750 for the purpose of developing the property. On November 6, 1978, K C executed a promissory note evidencing the loan. The note was secured by a future advance mortgage on the third sector of Southern Pines, which was also executed on November 6, 1978. Also, on that same date, AmSouth and K C executed a subdivision construction loan agreement. Neither the note, the mortgage, nor the loan agreement was executed under seal.
In April 1979, K C contracted to sell approximately 80 acres of land adjoining the subdivision to Southgate Company. This land was subject to mortgages from K C to the Bank that pre-dated the November 1978 mortgage. Because of the impending transaction between K C and Southgate, the Bank, on April 25, 1979, required K C to execute a general security agreement on a form document provided by the Bank. The agreement, which was executed under seal, stated, in part, that it was being executed in order to secure or better secure the existing indebtedness of K C to the Bank.
On September 26, 1979, the Bank requested and obtained from K C further security on the loan in the form of an assignment of deposit refunds due under contracts between K C and the Birmingham Water Works Board. K C had previously deposited certain funds with the Birmingham Water Works Board in order to have water and sewer mains extended to the subdivision. Portions of the deposit were to be refunded to K C when a newly constructed home was connected to the water main. Pursuant to K C's assignment of these deposit refunds to the Bank, refunds were sent to and collected by the Bank.
When the interest rates soared in 1979 and 1980, K C was unable to repay its loan to the Bank, and the November 6, 1978, mortgage was ultimately foreclosed on December 29, 1980. At the time of the foreclosure, the Bank alleges, the principal amount due on the loan was $150,316.27 and the interest due was $16,915.15, for a total balance due of $167,231.42. At the foreclosure sale, the Bank bid $152,500 and purchased the property.
After the Bank's foreclosure in 1981 and until 1987, the Bank and Kyatt maintained a relationship in which there was regular contact between the two regarding the collection of a consent judgment obtained by the Bank against Kyatt on unrelated loans that were made either to Kyatt personally or to Apex Construction Company, another of Kyatt's corporations. In early 1987, the Bank commenced garnishment proceedings against Kyatt, and in April of that year Kyatt filed a petition in bankruptcy. Kyatt maintains that during the bankruptcy proceedings he discovered, for the first time, that the Bank had failed to give full credit for payments on the loan, had failed to properly credit funds received in the foreclosure, and had failed to account for payments received from the assignment of refunds under K C's contract with the Birmingham Water Works Board. Thereafter, in December 1987, Kyatt and K C filed this action against the Bank.
 I.
The first issue raised in this appeal is whether the contract made the basis of the breach of contract claim stated in the *Page 674 
complaint is a sealed contract and, thus, subject to a 10-year statute of limitations. Generally, a claim based on a contract is subject to a six-year statute of limitations. See § 6-2-34, Ala. Code 1975. However, if the contract is under seal, an action may be commenced within 10 years. See § 6-2-33.
In the present case, the subdivision loan agreement, the promissory note, and the future advance mortgage were all executed on November 6, 1978, and the foreclosure took place on December 29, 1980. K C and Kyatt filed their complaint on December 22, 1987, over 7 years after the foreclosure. Therefore, the determinative question in this case is whether the contract that they allege the Bank breached was under seal.
They argue that the specific provision breached by the Bank was a covenant in the future advance mortgage that required the Bank, upon foreclosure of the mortgage, to apply the proceeds of the foreclosure sale:
 "First, to the expense of advertising, selling and conveying . . .; second, to the payment of insurance, taxes and other incumbrances . . .; third, to the payment in full of the principal indebtedness and interest thereon . . .; and, fourth, the balance, if any, to be turned over to the mortgagor."
They claim that at the time of foreclosure, the Bank paid the amount of $152,500 to obtain a foreclosure deed. They claim that the balance actually owed on the loan at the time of foreclosure was $103,000, and that the Bank's purchase created an over-age on the loan, rather than a deficiency.
Although it is undisputed that the future advance mortgage was not under seal, K C and Kyatt argue that the recitation of a sealed contract contained in the body of the general security agreement that was executed in April 1979 renders the subdivision loan agreement, the promissory note, and the future advance mortgage all under seal, because, they argue, the loan transaction that is contained in these separate documents is but one contract between the same two contracting parties.
In City of Birmingham v. Cochrane Roofing Metal Co.,547 So.2d 1159 (Ala. 1989), we considered an argument similar to that being made by K C and Kyatt in the present case. In that case, the city argued that bonds and other documents that were executed under seal were incorporated by reference into a construction contract, which was not executed under seal. Therefore, the city asserted that the 10-year statute of limitations for contracts under seal was applicable. After what this Court deemed a careful consideration of the purpose for having contracts under seal, as well as the parties' intent and the applicable policy concerns, we held that the construction contract was not under seal.
Although we are not confronted with exactly the same facts that were presented in Cochrane Roofing, the argument made by the city in that case is dispositive of the argument made by K C and Kyatt in the instant case. We note here, as we did inCochrane Roofing, that the guiding doctrine in determining whether a contract is sealed is the intent of the contracting parties. See Crane v. Pringle, 378 So.2d 721 (Ala. 1979); Moorev. Leseur, 18 Ala. 606 (1851). Also in Cochrane Roofing, we noted that, from a public policy standpoint, if we held that the incorporation by reference of a sealed document into an unsealed document rendered both documents under seal, then we, in effect, would be denying the parties the freedom to negotiate their contract.
In the present case, the general security agreement, which was under seal, was executed over six months after the promissory note, mortgage, and subdivision loan agreement were executed. While K C and Kyatt correctly assert that documents need not be executed contemporaneously in order to be construed together, as long as the documents refer to one another,Moorer v. Tensaw Land Timber Co., 246 Ala. 223, 20 So.2d 105
(1944), the future advance mortgage, which they claim was breached by the Bank, was not referenced or incorporated in any way into the general security agreement. Therefore, we conclude that the future advance *Page 675 
mortgage is not a contract under seal and that the six-year statute of limitations is applicable to the claims. Furthermore, because the action was filed more than six years after the foreclosure of the mortgage, the summary judgment for the Bank on K C and Kyatt's breach of contract claim is due to be affirmed.
 II.
The second issue raised in this appeal is whether K C and Kyatt's fraud and misrepresentation claims are barred by the statute of limitations. Initially, they argue that the Bank gave advice to Kyatt and that, therefore, the relationship between the Bank and Kyatt was a fiduciary one and that the Bank had a resulting duty that now estops the Bank from invoking the statute of limitations. In support of this contention, they cite to us Laraway v. First National Bank,39 Cal.App.2d 718, 104 P.2d 95 (1940).
Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank. See PowerEquipment Co. v. First Alabama Bank, 585 So.2d 1291 (Ala. 1991); Faith, Hope Love, Inc. v. First Alabama Bank ofTalladega County, N.A., 496 So.2d 708 (Ala. 1986). However, a fiduciary duty may arise when the customer reposes trust in the bank and relies on the bank for financial advice, or in other special circumstances. Bank of Red Bay v. King, 482 So.2d 274
(Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984).
In Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985), a fiduciary or confidential relationship was defined:
 " '[Such a relationship is one in which] one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.'
"15A C.J.S. Confidential (1967)."
482 So.2d at 284.
In determining whether the relationship between Kyatt and the Bank evolved into a fiduciary relationship, we find Nettles v.First National Bank of Birmingham, 388 So.2d 916 (Ala. 1980), to be instructive. Nettles arose out of the foreclosure of a mortgage held by a bank on property owned by Nettles and his company. Nettles had mortgaged both his own property and that of the company to secure the company's debts. When the company began to fail, the Bank made extensive efforts, in cooperation with Nettles, to work out the debt. The efforts, however, were fruitless, and the company failed. The mortgage was foreclosed and the property later sold.
Nettles and his company sued the bank, claiming, among other things, breach of a fiduciary duty. The trial court dismissed the complaint, holding that the claims were barred by the statute of limitations. This Court affirmed, holding that no fiduciary relationship existed between the parties and that no such relationship was created by the parties' conduct. This Court stated:
 "[The bank] took an active role in attempting to improve the Company's financial position: [the bank] made various recommendations, caused various documents to be prepared, made additional secured loans, and kept close tabs on the Company's operation. Notwithstanding this active role, the essential relationship between the parties remained that *Page 676 of debtor-creditor, and the parties dealt with each other at arm's length."
388 So.2d at 920. (Emphasis supplied.)
In the present case, evidence in the record reveals that the Bank was far less involved in the company's affairs than was the bank in Nettles. Here, the Bank's only relationship with K C and Kyatt was that of a creditor. The Bank neither assumed control of K C nor attempted to give advice on K C's day-to-day operational decisions. We conclude, therefore, that in the present case K C and Kyatt failed to present substantial evidence of a fiduciary relationship between them and the Bank. Thus, we do not reach the question whether, under Alabama law, the existence of a fiduciary relationship estops a party from invoking the statute of limitations.
Looking now to the issue whether K C and Kyatt's fraud claims are barred by the statute of limitations, we note that at the time that they brought this action § 6-2-3, Ala. Code 1975, provided:
 "In actions seeking relief on the grounds of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."
Furthermore, we have held that fraud is deemed to have been discovered when it ought to have been discovered; that is, at the time of the discovery of facts that would provoke inquiry by a person of ordinary prudence and which, if followed up, would lead to the discovery of the fraud. Papastefan v. B LConstr. Co., 385 So.2d 966 (Ala. 1980).
Here, K C and Kyatt argue that they presented substantial evidence that they had no notice of the Bank's alleged fraudulent conduct until March 1987, when, during the course of discovery proceedings with respect to a claim filed by the Bank regarding Kyatt's bankruptcy petition, K C and Kyatt, for the first time, gained access to documents showing that K C's loan account was not properly credited by the Bank.
Initially, the burden is on the plaintiff to show that he comes within the provisions of § 6-2-3. Lowe v. East EndMemorial Hosp., 477 So.2d 339 (Ala. 1985). While the time of the discovery of the fraud or the time the fraud should have been discovered is usually an issue of fact to be decided by the trier of fact, Ryan v. Charles Townsend Ford, Inc.,409 So.2d 784 (Ala. 1981), under certain circumstances such a determination can be made as a matter of law. McLaughlin v.Pannell Kerr Forster, 504 So.2d 264 (Ala. 1987).
In the present case, the Bank, in its motion for a summary judgment, asserted that the statute of limitations had run on K C and Kyatt's fraud claims, because the Bank alleged that in January 1981 it had foreclosed the mortgage from which K 
C and Kyatt's claims arose. The complaint alleging fraud was not filed until December 1987. The Bank supported its motion for summary judgment with copies of the documents and records evidencing the loan transaction between the parties, as well as with an affidavit and deposition testimony. After the Bank made its properly supported motion for summary judgment, the burden then shifted to K C and Kyatt to present substantial evidence that, before the time they claim to have discovered the alleged fraud (March 1987), they had had no notice of the alleged fraud and there had existed no circumstances that would have placed them on notice that further inquiry was warranted. The record reveals that K C and Kyatt failed to carry this burden.
In response to the Bank's motion for summary judgment, K C and Kyatt filed a brief in which they alleged:
 "The statute of limitations does not begin to run until the facts constituting the fraud were discovered by the aggrieved party. In this case, such discovery and commencement of the limitations period did not occur until March, 1987. As the complaint was filed in December, 1987, the defendant's assertion that the statute of limitations had run is improper." *Page 677 
In its response to the motion for summary judgment, K C and Kyatt did not indicate any reason that would have kept them from discovering the fraud before March 1987, had they inquired into the matter. For example, although they attempt to make the argument on appeal, K C and Kyatt did not allege in their response to the summary judgment motion that the Bank's records regarding the loan to K C were not available to them before March 1987. In order for them to come within the provisions of § 6-2-3, they were required to show what prevented them from discovering the alleged wrong before the bar of the statute was complete and to acquit themselves of all knowledge of facts that ought to have put them on notice. See Johnson v.Shenandoah Life Ins. Co., 291 Ala. 389, 281 So.2d 636 (1973). Because K C and Kyatt failed to make that showing, we find no error in the trial court's entry of a summary judgment for the Bank.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
ALMON, ADAMS and STEAGALL, JJ., concur.
HORNSBY, C.J., concurs in the result.
[1] Because the appellants raise on appeal only issues relating to the propriety of the summary judgment on their breach of contract claims and their fraud and misrepresentation claims, the summary judgment is due to be affirmed as to the other claims stated in the appellants' complaint.