**Thomas Scotty ATKINS and Mary Virginia Atkins, Plaintiffs,**

v.

**GE CAPITAL MORTGAGE SERVICES, INC., Defendant.**

**Civil Action No. 96–D–1550–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

Jan. 23, 1998.

---

Michael S. Harper, Steven F. Schmitt, Tallassee, AL, Carl M. Benson, Auburn, AL, for Plaintiffs.

Robert K. Spotswood, Richard H. Monk, III, Birmingham, AL, for Defendant.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are the following motions, memoranda, and other pleadings regarding Defendant's pending Motion for Summary Judgment in the above styled case:

(1) Defendant's Motion for Summary Judgment ("Def.'s Mot. Summ. J."), Memorandum in Support ("Def.'s Mem. Supp."), and accompanying submission of evidence, filed May 7, 1997.

(2) Defendant's Amendment to Motion for Summary Judgment ("Def.'s Am. Mot. Summ. J."), filed June 6, 1997.

(3) Plaintiffs' Response to Statement of Facts and Brief in Response to Defendant's Motion for Summary Judgment ("Pls.' Resp."), and accompanying designations of evidence, filed June 10, 1997.

(4) Defendant's Reply Brief in Support of Motion for Summary Judgment ("Def.'s Reply"), filed June 26, 1997.

(5) Defendant's Supplemental Statement of Facts and Memorandum in Support of Motion for Summary Judgment ("Def.'s Suppl. Mem. Supp ."), and accompanying supplemental submission of evidence, filed July 2, 1997.

(6) Plaintiffs' Response to Defendant's Reply Brief in Support of Motion for Summary Judgment ("Pls.' Resp. Def.'s Reply"), filed July 3, 1997.

(7) Plaintiffs' Brief in Opposition to Defendant's Supplemental Statement of Facts and Memorandum in Support of Motion for Summary Judgment ("Pls.' Suppl. Resp."), Supplemental Designation of Evidence in Opposition, and Response to Supplemental Statement of Facts, filed July 15, 1997.

(8) Plaintiffs' Motion to Supplement Submission in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Mot. Suppl."), with attached supplemental submission, filed July 30, 1997.[1]

(9) Plaintiffs' Supplement in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Second Suppl. Resp."), filed January 16, 1998.

### JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The parties do not contest venue or personal jurisdiction.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at

---

**1.** The court notes that this motion is due to be granted.

248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; see also Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587; see also Anderson, 477 U.S. at 249.

### FACTS

On December 16, 1993, Plaintiffs executed a promissory note ("Note") in favor of Ford Mortgage Services, Inc. ("Ford"), in the amount of $62,000.00. To secure the Note, Plaintiffs executed a mortgage ("Mortgage") on their home in favor of Ford on the same date. The Note and Mortgage were immediately assigned to Empire of America Realty Credit Corporation ("Empire"). At the loan closing, Plaintiffs also purchased a homeowners insurance policy ("Policy") from Farmers Insurance Group ("Farmers"), which provided for the replacement of the property, in the event of loss, up to a policy limit of $62,000.00. The policy further provided that funds, in the event of a loss, would be paid to the mortgagee (Plaintiffs) and the named insured (Defendant).

Plaintiffs began sending payments on the Mortgage to Defendant GE Capital Mortgage Services, Inc. ("GECMSI") sometime after May of 1994, when they were notified by Defendant that the servicing rights to the Mortgage had been purchased from Empire by GECMSI. On September 26, 1994, the property that was the subject of the Mortgage was burned in a fire. Plaintiffs reported the fire to Defendant on September 29, 1994. At the time of the fire, Plaintiffs were in default on their Mortgage, as they had not made their September 1, 1994 payment. Although Plaintiffs did eventually make the September payment on their Mortgage (the payment posted with GECMSI on October 17, 1994), they then ceased making payments on the Mortgage.

Defendant sent a general demand letter to Plaintiffs on December 14, 1994. This letter stated that Plaintiffs were in default on their Note and explained several options that GECMSI might pursue if the Note was not made current. Among other remedies, the Mortgage allowed the lender to accelerate payments in the case of default, while the Note allowed the holder to do the same. Both the Mortgage and the Note also allowed the appropriate party (lender or holder) to forbear their rights without waiving them.

Attorney Steven F. Schmitt first began his representation of Plaintiffs sometime late in 1994, after the Plaintiffs' house was damaged by fire. Plaintiffs first approached attorney Mike Benson after the fire, but were referred to Schmitt. While Schmitt became lead counsel in the lawsuit against Farmers that ensued, Benson remained associated with and involved as counsel for Plaintiffs. Attorney Michael Harper also became associated as counsel and assisted in Plaintiffs' representation.

Plaintiffs filed suit against Farmers on January 11, 1995 because of a dispute over the amount due under Plaintiffs' insurance policy with Farmers. Farmers contended that the fire caused only a partial loss, and that only $42,881.06 was due Plaintiffs under the policy, while Plaintiffs contended that the

house was a total loss and therefore the policy limit of $62,000.00 was due.

On January 20, 1995, Schmitt sent GECMSI a check in the amount of $42,881.06 from Farmers. The check was made payable to "Thomas Scotty Atkins & Mary V. Atkins and GE Capital Mortgage and their attorney Steven Schmitt." The check was endorsed by the Atkins and Schmitt. On the back of the check, Schmitt wrote "For Deposit Only into GE Capital Mortgage Account for Benefit of Thomas Scotty Atkins & Mary V. Atkins." GECMSI deposited the $42,881.06 check into a hazard suspense account from which GECMSI received some benefit. Plaintiffs were aware that the insurance check had been deposited into the hazard suspense account. Plaintiffs' Mortgage provided as follows regarding the application of insurance proceeds:

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.

(Def.'s Mem. Supp., Ex. B ¶ 5.)

Plaintiffs were required to make payments to an escrow account for yearly property and hazard insurance premiums, which were then to be paid, on their behalf, to their insurer. On or about October 21, 1994, Farmers sent Plaintiffs notice that a renewal premium was due on their policy and Farmers billed GECMSI directly. GECMSI paid this premium on or about November 21, 1994, on Plaintiffs' behalf, which renewed Plaintiffs' insurance policy through December 16, 1995. The balance of Plaintiffs' escrow account was $28.53 after the payment of this premium, so that all subsequent payments from this account on their behalf were made by Defendant with its own funds.

On November 10, 1995 and December 16, 1995, Defendant sent notice to Plaintiffs that a renewal bill had not been received from Farmers to insure Plaintiffs' property. These notices indicated that Defendant would purchase an insurance policy from American Sterling Insurance at Plaintiffs' expense if proof of insurance was not provided. On or about January 26, 1996, after Farmers issued a lapse notice, GECMSI used its own funds to pay the Farmers renewal premium through December 16, 1996. Defendant also purchased the American Sterling insurance policy at or about the same time, with its own funds. This policy was canceled when Plaintiffs informed Defendant that Defendant had mistakenly insured the same property twice.

Defendant also charged certain inspection and maintenance fees to Plaintiffs' escrow account while Plaintiffs were in default on their Mortgage. The provisions of the Mortgage allowed the lender to "do and pay for whatever is necessary to protect the value of the property and Lender's rights in the property." (Def.'s Mem. Supp., Ex. B ¶ 7.) In addition, the Mortgage obligated Plaintiff to "not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property." (*Id.*)

On May 16, 1996, Plaintiffs' lawsuit against Farmers concluded. Plaintiffs were awarded a verdict of $366,560.00, including $300,000.00 in punitive damages. The judgment was satisfied, with interest, by a check for $370,-634.64 tendered to Plaintiffs on June 13, 1996. Plaintiffs then contacted Defendant, on June 24, 1996, to arrange payment in full of Plaintiffs' Mortgage with GECMSI. Defendant contacted Plaintiffs on August 6, 1996, indicating that the total payoff amount on the Mortgage was $29,254.24 as of August 15, 1996. This figure included a credit for the $42,881.06 that Plaintiffs have previously tendered to GECMSI and that had been held in a hazard suspense account since January, 1995. On August 9, 1996, Plaintiffs sent a payment of $29,254.24 along with a letter indicating that the payoff was made under protest because, among other things, Defendant had maintained the insurance check in a hazard suspense account instead of applying it to Plaintiffs' principal. On September 5, 1996, Defendant sent Plaintiffs a "Corporate Cancellation and Release" which indicated that Plaintiffs' debt with GECMSI had been paid in full and was discharged.

Plaintiffs filed suit against Defendant in state court on September 9, 1996. The action was removed to this court by Defendant on October 15, 1996. Plaintiffs amended their Complaint once, on April 5, 1997. Plaintiffs' complaint advances the following claims against Defendant: (1) breach of contract; (2) violation of 12 U.S.C. § 2605(e), the Real Estate Settlement Procedures Act ("RESPA"); (3) conversion; (4) fraud/misrepresentation; (5) suppression; (6) breach of fiduciary duty.

### DISCUSSION

Defendant now seeks summary judgment on each of Plaintiffs' claims. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion is due to be granted in part and denied in part. The court will address the Parties' arguments on summary judgment as they relate to each of Plaintiffs' claims in turn, but will begin by addressing Defendant's contention that all of Plaintiffs' claims are barred by the terms of a class action settlement.

I. The *Strommer* Class Action Settlement Is Inapplicable to the Facts of This Action

Defendant contends that virtually all of Plaintiffs' claims are barred by the terms of a class action settlement in a case styled *Strommer v. GE Capital Mortgage Services, Inc.*, CV 92–16064, in the District Court of Hennepin County, Minnesota. (Def.'s Mem. Supp. at 30; Def.'s Reply at 3–8.) The only claims that may proceed, Defendant argues, are Plaintiffs' breach of contract claims that arose after June 19, 1995. (Def.'s Mem. Supp. at 32.) In contrast, Plaintiffs argue that: (1) the claims released in the *Strommer* settlement do not include those presently advanced by Plaintiffs (Pls.' Resp. at 87–91; Pls.' Resp. Def.'s Reply at 1–4, 8; Pls.' Second Suppl. Resp. ¶¶ 3–7); (2) notice to Plaintiffs was defective (Pls.' Resp. at 91–92; Pls.' Resp. Def.'s Reply at 5–7); and (3) Defendant failed to affirmatively plead the *Strommer* settlement defense. (Pls.' Resp. at 92–93; Pls.' Resp. Def.'s Reply at 7–8.)

The court notes initially that Plaintiffs are correct in their assertion that the Minnesota court that governed the entry of the *Strommer* Settlement ("Settlement") has maintained jurisdiction over its "interpretation, implementation, effectuation, and enforcement." (Pls.' Resp. Def.'s Reply at 8.) In its present discussion of the Settlement, however, the court does not offend the jurisdiction of the District Court of Hennepin County. The court's findings herein consist entirely of a straightforward review and application of the Settlement on its face. The clarity of the Settlement as applied to the instant facts leaves no room for interpretation or inquiry into matters that are not evident from a simple reading of its provisions. In short, the court finds that the Settlement is unambiguously inapplicable to the current set of facts.

The court also notes that both Parties have analyzed the Settlement almost exclusively as it relates to the Alabama law on releases.[2] (*See* Def.'s Reply at 3–5; Pls.' Resp. Def.'s Reply at 1–4.) The terms of the Settlement, however, provide that it shall be interpreted in accordance with the laws of Minnesota. (Def.'s Mot. Summ. J., Ex. A to Kaplan Aff. at 31.) Although the law regarding general releases is more or less uniform throughout the United States, the Parties' arguments regarding the release should have addressed Minnesota Law. *See Coral Gables Imported Motorcars, Inc. v. Fiat Motors of North America, Inc.*, 673 F.2d 1234, 1238 (11th Cir.1982).

These considerations aside, it is clear that the Settlement and the case from which it arose dealt exclusively with escrow accounts. (Def.'s Mot. Summ. J., Ex. A to Kaplan Aff. at 1–3, 6–17, 27–28; Pls.' Second Suppl. Resp., Foster Dep. at 38–40.) Specifically, the *Strommer* case dealt with GECMSI's alleged practice of requiring its homeowners to place certain "excessive" amounts of money in escrow. (Pls.' Resp., Ex. A to Reed Aff. ¶ 1; Def.'s Mot. Summ. J., Ex. A to Kaplan Aff. at 2 ¶ 3.) In contrast, the instant case deals with a hazard suspense ac-

---

2. Defendant cites a single Minnesota case for the proposition that general releases are also valid in Minnesota. (Def.'s Reply at 3–4.)

count, which, as Plaintiffs rightly assert, is different from an escrow account.[3] (Pls.' Second Suppl. Resp. ¶¶ 4–5, *quoting* Foster Dep. at 38–40.) In fact, Defendants admit that the two accounts are different in their Reply Brief, wherein they state "the claims asserted by the Atkins in this action are different from those asserted in *Strommer.*" (Def.'s Reply at 3.) Defendants contend, however, that the Settlement still acts to bar the instant proceedings because of the breadth of the release by the class members in *Strommer.* (*Id.* at 3–5; Def.'s Mem. Supp. at 32.)

Defendant draws a distinction between the doctrines of res judicata and release, and argues that, even though the Settlement would not operate to bar the instant proceeding by res judicata, this action is nevertheless barred because of the general nature of the release encompassed in the Settlement. (Def.'s Reply at 3.) Although Defendant's distinction between these two doctrines is valid, the court is not persuaded by Defendant's ensuing argument that "the broad language of the Settlement Agreement releases GECMSI from the claims asserted in this lawsuit." (Def.'s Mem. Supp. at 32.)

█ Generally, the scope of a release agreement depends on the parties' intent. *Clark v. Allstate Ins. Co.,* 405 N.W.2d 463, 465–66 (Minn.App.1987). If the contract's written terms are not ambiguous, then the court need look no further than the document itself to ascertain the parties' intent. *Metropolitan Sports Facilities Comm'n v. General Mills, Inc.,* 470 N.W.2d 118, 122–23 (Minn.1991); *Cf. Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979) (holding that if contract language is ambiguous and its construction depends on extrinsic evidence, there is a question of fact for the jury). A contract is ambiguous if its terms have no obvious meaning or are susceptible to more than one interpretation based on its language alone. *In re Indenture of Trust,* 437 N.W.2d 430, 435 (Minn.App.1989). Whether a contract is ambiguous presents, in the first instance, a legal question for the court. *Williams v. Harris,* 518 N.W.2d 864, 867 (Minn.App.1994).

█ Defendant quotes, but only in part, the most important language of the Settlement in its Memorandum in Support of Summary Judgment. (*Cf.* Def.'s Mem. Supp. at 31 with Def.'s Mot. Summ. J., Ex. A to Kaplan Aff. at 27–28.) Moreover, Defendant excludes this crucial language entirely in its Reply Brief. (*See* Def.'s Reply at 5.) The relevant language relates to exactly what claims are released, and reads:

> When the Dismissal Order becomes final and as of that date each Class member who has not timely and properly excluded himself or herself from the Settlement Agreement Class hereby releases and agrees to refrain from proceeding in any way ... with respect to any and all past, present and future claims, actions, causes of action, rights or liabilities, whether known or unknown, matured or contingent ... based on, arising out of, or in any way **relating or pertaining to the Escrow Accounting Practices of GECMSI** in connection with the Mortgage Loans for which it performed Mortgage Servicing, including (1) the provisions pertaining to Escrow Accounts in any Mortgage Contracts underlying Mortgage Loans for which GECMSI performed Mortgage Servicing; (2) GECMSI's methodology or formula for calculating, collecting, accumulating, maintaining and disbursing amounts required to be maintained in Escrow Accounts; and (3) any of the events, statements or allegations or claims contained in or which could have been contained in Plaintiffs' complaint (the "Released Claims").

(Def.'s Mot. Summ. J., Ex. A to Kaplan Aff. at 27–28 (emphasis added).)

Here, the plain language of the release clearly relates to the "Escrow Accounting Practices" of GECMSI. (*Id.* at 28.) Certainly, the release is broad in that it encompasses all claims related to those Accounting Practices during the dates in question and regarding the members of the class. (*Id.*) The basis for determining whether a claim is released by this Settlement, however, turns on the issue of whether it is related to GECMSI's "Escrow Accounting Prac-

---

3. As Plaintiffs state, one of the major differences between the two types of accounts is that "a 'hazard suspense account' does not involve bor-

rowers' money held ... for periodic payments to third parties as do the funds held in ... escrow accounts." (Pls.' Second Suppl. Resp. ¶ 4.)

tices." Defendant seems to miss this point—GECMSI has done little except advance unsupported assertions that the *Strommer* release is broad, and therefore that it encompasses and bars the current action. Although Defendant is correct that general releases are indeed valid under Minnesota law, *Sorensen v. Coast-to-Coast Stores*, 353 N.W.2d 666 (Minn.App.1984), there must still be some nexus between the subject matter of the release and the subject matter of the claim sought to be precluded. The *Sorensen* court held no less.[4]

As the court finds that the Settlement is clearly inapplicable to the claims advanced in the current action, it need not address Plaintiffs' alternative contentions of ineffective notice and failure to plead. (*See* Pls.' Resp. at 87–93; Pls.' Resp. Def.'s Reply at 1–9.) In addition, as the court has found no ambiguity

---

4. In examining whether the release at issue covered the subject claim, the Minnesota Court of Appeals held that "[t]hose causes of action existed at the time of the release whether Sorenson knew of them or not and are **within the scope of the release.**" *Sorensen* 353 N.W.2d at 668 (emphasis added). Here, the subject causes of action existed at the time of the release, but clearly do not fall within the scope of the release.

 Although the release is general in nature, its scope is, in the first instance, limited by the operative facts and elements of the claim(s) that form its foundation. In other words, the "scope" inquiry begins with an examination of whether the facts underlying the claims that formed the basis of the Settlement are similar or relate to or arose from the facts that form the basis of the claim sought to be precluded by the Settlement. As the Plaintiffs correctly indicate, to hold otherwise would mean that "if [Plaintiffs] slipped and fell at a GE Capital Office while visiting their loan officer [during the time covered by the release], they would be barred from suing GE...." (Pls.' Resp. Def.'s Reply at 3.)

5. Defendant filed a Motion in Limine to Exclude Testimony Regarding Prior Lawsuit on January 9, 1998. Plaintiffs filed an Objection to this Motion in Limine on January 20, 1998. The subject of the motion is the *Strommer* class action. The court finds Defendant's motion and citations of authority to be persuasive and, as noted above, has determined that no ambiguity exists in the Settlement—that the Settlement is, in short, inapplicable on its face. Thus, as stated by Defendant, no jury issue remains regarding *Strommer*.

 In addition, the court finds that any testimony regarding the *Strommer* class action, notwithstanding Plaintiffs' allegations of a "pattern and practice" of intentional conduct by GECMSI, is

---

in the *Strommer* Settlement, there is no need to inquire into intent or submit the issue to the jury, as requested by Plaintiffs.[5] (See Pls.' Resp. Def.'s Reply at 1.) Having addressed the applicability of *Strommer*, the court now moves to consider the arguments of the Parties as to each of Plaintiffs' claims.

## II. Plaintiffs' Breach of Contract Claim Survives Summary Judgment

Plaintiffs claim that Defendant breached the terms of the Note and Mortgage in three ways: (1) by placing the $42,881.06 check from Farmers in a hazard suspense account instead of applying it to pay down Plaintiffs' Mortgage principal; (2) by paying insurance fees from Plaintiffs' mortgage escrow account;[6] and (3) by paying maintenance and inspection fees from Plaintiffs' escrow account[7]. (Complaint ¶ 19.) Defendant argues

---

not relevant to the instant action under Federal Rules of Evidence 401 and 402. Moreover, the court is convinced that such testimony would be unduly prejudicial to Defendant and would cloud the issues of the instant action in the jurors' minds. Thus, the evidence is also due to be excluded under Federal Rule of Evidence 403, and Defendant's Motion in Limine is accordingly due to be granted.

 The court also notes that, based on its findings regarding the *Strommer* class action as detailed above, the following motions of Plaintiffs are due to be denied as moot:
 (1) Plaintiffs' Motion to Strike Affidavit of Daris Foster, filed July 2, 1997;
 (2) Plaintiffs' Motion to Strike Affidavit of Richard A. Kaplan, filed July 2, 1997;
 (3) Plaintiffs' Motion to Renew their Motion to Strike Affidavit of Daris Foster, filed July 18, 1997;
 (4) Plaintiffs' Motion to Amend their Motion to Strike Affidavit of Daris Foster, filed July 18, 1997;
 (5) Plaintiffs' Motion to Strike Additional Affidavit of Daris Foster, filed July 18, 1997.

6. The court notes, for purposes of clarity, that these allegations are not affected by the *Strommer* Settlement discussed above. Plaintiffs' allegation is that Defendants continued to insure their property when it was a complete loss. (Compl. ¶ 19.) In contrast, the Strommer allegations concerned GECMSI's requirements regarding maintaining or depositing a certain level of funds into a homeowner's escrow account. (Pls.' Resp., Ex. A to Reed Aff. ¶¶ 4–20.)

7. For reasons similar to those noted in footnote 6, the court finds that *Strommer* does not affect this allegation.

that each of these actions was permitted by the terms of the Note and Mortgage. (Def.'s Mem. Supp. at 4.) Plaintiffs contend that the actions were not permitted by the terms of either instrument because of the fact that Plaintiffs' property was a "total loss." (Pls.' Resp. at 43.) In addition, Plaintiffs contend that it is unclear whether Defendants owned Plaintiffs' Note or Mortgage, or had the servicing rights to Plaintiffs' Mortgage. (*Id.* at 36–38; Pls.' Suppl. Resp. at 2–8; Pls.' Resp. Def.'s Reply at 11–13.)

 "The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Strength v. Alabama Dep't of Finance, Div. of Risk Mgmt.*, 622 So.2d 1283, 1289 (Ala. 1993); *see also Steiger v. Huntsville City Bd. of Ed.*, 653 So.2d 975, 978 (Ala.1995). "A breach of contract is defined as a 'failure, without legal excuse, to perform any promise which forms the whole or part of a contract.'" *Mann v. Bank of Tallassee*, 694 So.2d 1375, 1380 (Ala.Civ.App.1996) (*citing* Black's Law Dictionary 188 (6th ed.1990); 17A Am.Jur.2d Contracts § 716 (1991)). To establish that a breach of contract occurred, the "claimant[s] must prove: (1) the existence of a valid contract binding the parties in the action, (2) [their] own performance under the contract, (3) the defendant's non-performance, and (4) damages." *Southern Medical Health Systems, Inc. v. Vaughn*, 669 So.2d 98, 99 (Ala.1995) (citations omitted).

In the present action, it is the first and third elements as to which factual disputes exist. That is, the court finds that at least two factual issues presented by Plaintiffs preclude the entry of summary judgment on the contract claim. First, the court finds that there is a genuine issue of material fact as to whether Defendant owned the Mortgage and/or the servicing rights to the Mortgage. This is relevant to the issue of whether there was a valid contract between the parties. In addition and in the alternative, the court finds that there is a genuine issue of material fact regarding the fire damage to the Plaintiffs' property. This is relevant to the issue of whether Defendant failed to perform duties that were owed Plaintiffs under the contract.

Neither Party disputes that a valid contract, in the form of the Note and Mortgage, existed between Plaintiffs and *someone*. At issue, however, is whether Defendant either (1) owned the Note and/or Mortgage, or (2) possessed the servicing rights to the Mortgage.

 "There is no requirement that magical words be used to accomplish an assignment, and an assignment may be written, parol, or otherwise." *Baker v. Eufaula Concrete Co., Inc.*, 557 So.2d 1228, 1230 (Ala. 1990). "Courts look to substance rather than form." *Id.* The test, as set forth in *Andalusia Motor Co.*, supra, is whether the purported assignor intended to transfer a present interest in the subject matter of the contract. *Id.* (*citing Andalusia Motor Co. v. Mullins*, 28 Ala.App. 201, 183 So. 456, 459 (1938) (citations omitted)). This is a question of fact to be determined under the attendant circumstances. *Id.*

 Defendants argue that ownership and/or servicing rights were transferred to GECMSI via an agreement entered into with Empire on December 16, 1992. (Def.'s Suppl. Mem. Supp. at 3–4, 8–9.) Defendant contends that this agreement was, in essence, a "sale" of the servicing rights to GECMSI. (*Id.*) None of the exhibits in support of this pleading, however, specifically mention Plaintiffs' loan except for a computer printout from Empire's records. (*See* Def.'s Suppl. Mem. Supp., Ex. B to Rossi Aff.) Rossi, a Manager of Contract Compliance with GECMSI, states that this indicates that Plaintiffs' Mortgage was included in the "sale" from Empire. (Rossi Aff. ¶ 6–7.) The document gives no indication, however, that this is the case—Rossi's unsubstantiated assertion is the only evidence that Plaintiffs' Mortgage was included in the "sale." The court is unconvinced, based on Rossi's statement alone, that Plaintiffs' loan was indeed included in the sale.

In opposition, Plaintiffs question the chain of ownership and assignment of Plaintiffs' Mortgage and Note at several points. (*See* Pls.' Suppl. Resp. at 5–8; Pls.' Resp. Def.'s Reply at 10–11.) The only evidence that Defendant has adduced regarding its ownership is an assignment that was recorded on

June 10, 1997, (Def.'s Suppl. Mem. Supp. at 6.), well after the facts that gave rise to this action occurred.

The court can find no other facts or evidence advanced by the Defendant to support an inference that a valid assignment ever occurred with respect to Plaintiffs' Mortgage prior to this action. In addition, Defendant has not produced Plaintiffs' original Note. (Def.'s Suppl. Mem. Supp. at 9–10.) When all of this evidence, or more accurately the lack thereof, is considered as a whole, the court finds that a reasonable juror could infer that Defendant never owned Plaintiffs' Mortgage or Note. Moreover, the court finds that the role of the jury will be paramount in assessing the credibility of Defendant's witnesses and evidence on this issue.

■ Turning to the issue of fire damage to Plaintiffs' property, it is clear that the actions that Defendant was contractually obligated to take would vary depending on whether repair or restoration of Plaintiffs' property was "economically feasible." (Def.'s Mem. Supp. at 5–6.) The feasibility of repair, in turn, hinged on the severity of damage to the property. In addition, whether charges made in inspecting and insuring the property were "necessary," as required by the Mortgage, depended on the extent of damage as well. (Pls.' Resp. at 46–49.)

Defendants argue that they were in no position to "arbitrate the dispute between the Atkins and their insurer and thereby determine whether or not the property was economically repairable." (Def.'s Mem. Supp. at 7.) Plaintiffs' highlight extensive evidence, however, indicating that Defendant either knew or believed that the property was so severely damaged as to constitute a total loss. For example, Plaintiffs point out that GECMSI's own employee commented that Defendant could not foreclose on a "property that no longer exists." (Pls.' Resp. at 44–45, *citing* Ex. 124 at 1.) In addition, an independent contractor of Defendant's indicated "[w]e do not believe this property can be repaired at an economical cost." (*Id.* at 44, *citing* Ex. 124 at 15.) Based on this evidence, among other evidence, a reasonable juror could readily conclude that Defendant breached its Mortgage with Plaintiffs.

The court is not persuaded by Defendant's argument that the court should imply "provisions which carry out the purpose of the contract." (Def's Mem. Supp. at 7.) Defendant would have the court find that the actions of GECMSI were entirely reasonable, as a matter of law and under the terms of the Mortgage, with respect to its treatment of the Farmers insurance check. Certainly the purpose of the contractual provision regarding the treatment of insurance money in the event of a loss is at least twofold: (1) to provide Plaintiff security by making the funds available in the event that Plaintiffs' house is repairable; (2) to provide the mortgage company security by assuring them access to the proceeds if their collateral is impaired. Under the circumstances presented herein, it would have been just as reasonable for Defendant to make a determination that the property was not repairable, regardless of the ongoing litigation between Plaintiffs and Farmers, and accordingly pay down Plaintiffs' principal, as for Defendant to wait until the lawsuit was finished.

The court thus finds, viewing the evidence in a light most favorable to Plaintiffs, that Defendant has not carried its burden of demonstrating that there is no genuine issue of material fact as to Plaintiffs' contract claim. Defendant's Motion for Summary Judgment is accordingly due to be denied as to Plaintiffs' breach of contract claim. The court thus moves to consider Plaintiffs' next claim.

### III. Plaintiffs' Claim for Violation of RESPA Survives Summary Judgment

Plaintiffs claim that Defendant violated RESPA by failing to acknowledge receipt within 20 days (or respond within 60 days) to Plaintiffs' written inquiries. (Compl. ¶¶ 23–24.) Defendant's only asserted ground for summary judgment as to Plaintiffs' RESPA claim is that the *Strommer* Settlement released the claim. As discussed above, the court finds that the *Strommer* Settlement has no application to Plaintiffs' claims in the instant action. Defendant's Motion for Summary Judgment is accordingly due to be denied as to Plaintiffs' RESPA claim.

**IV. Plaintiffs' Claim for Conversion Survives Summary Judgment**

■ Plaintiffs claim that Defendant converted the $42,881.06 insurance check from Farmers. (Compl.¶ 26–28.) As Defendant correctly states, conversion is the wrongful taking of another person's property.[8] (Def.'s Mem. Supp. at 13, *citing Dayton Const., Inc. v. Meinhardt,* 882 S.W.2d 206, 208 (Mo.Ct. App.1994); *Citizens Bank of Moulton v. Jones,* 671 So.2d 737, 740 (Ala.Civ.App.1995)). In order to support a claim for conversion, legal title and the immediate right of possession to the property in question must be shown. (*Id., citing Boshers v. Humane Soc. of Missouri, Inc.,* 929 S.W.2d 250, 254 (Mo. Ct.App.1996); *Thompson v. Ford Motor Credit Co.,* 550 F.2d 256, 258 (5th Cir. 1977).)[9]

■ The court finds that its previous discussion regarding the ownership issue under the Mortgage is crucial to, if not dispositive of, the element of right to possession of the insurance check under a conversion analysis.[10] Specifically, if Defendant did not own the Mortgage or have certain rights thereto, its assertions in its Motion for Summary Judgment that it had title to the check will fail. Accordingly, the court finds that summary judgement as to Plaintiffs' conversion claim is inappropriate.

**V. Plaintiffs' Claims for Fraud/Misrepresentation Survive Summary Judgment in Part**

Plaintiffs allege that Defendant misrepresented that Plaintiffs' Mortgage would become "due and payable" if Plaintiffs did not pay at least $1,784.55 by January 13, 1995. (Compl.¶ 30.) In other words, Plaintiffs contend that they only submitted the insurance check because Defendant allegedly represented that the Mortgage would be accelerated. (*Id.*) In addition, Plaintiffs allege that Defendant has misrepresented its ownership interest in the Mortgage and Note. (First Am. Compl. ¶ 44.)

■ In *Boswell v. Liberty National Life Ins. Co.,* 643 So.2d 580, 581 (Ala.1994), the Alabama Supreme Court noted the elements of a cause of action based on misrepresentation, stating "[t]o establish a prima facie case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance." Ala.Code § 6–5–101 (1975); *Crowder v. Memory Hill Gardens, Inc.,* 516 So.2d 602 (Ala.1987); *International Resorts, Inc. v. Lambert,* 350 So.2d 391 (Ala. 1977).

■ Defendant first argues that GECMSI fully disclosed its intentions with respect to the acceleration of the Mortgage without misrepresenting any facts. (Def.'s Mem. Supp. at 18–20.) Defendant further contends that Plaintiffs cannot establish that they relied on Defendant's alleged misrepresentations in any way. (Def.'s Mem. Supp. at 20–22.) Defendant contends that Plaintiffs were under a legal obligation to tender the insurance proceeds as they did. (*Id.*; Def.'s Reply at 13.) Therefore, Defendant maintains, the Plaintiffs' payment of the $42,881.06 was not the result of detrimental reliance on the Defendant's representations.

In response, Plaintiffs argue that "GE did not do what it represented to the Atkins it would do in the letter of December 14, 1994," meaning that Defendant never accelerated the Mortgage. (Pls.' Resp. at 60, *citing* Suarez Dep.) In addition, Plaintiffs maintain that acceleration was an impossible option due to the condition of the property after the fire. (*Id.* at 61.)

The court finds Defendant's reliance argument on this issue to be persuasive. "A

---

8. The court notes that the law of the state wherein the property was allegedly converted is applicable to Plaintiff's conversion claim—here, Missouri. As Defendant indicates by his citation to both Missouri and Alabama law, the applicable standards do not differ. (See Def.'s Mem. Supp. at 13.)

9. The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Cir-

cuit handed down prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981)(in banc).

10. The court notes, however, that other evidence, such as the restrictive endorsement placed on the check by the Plaintiffs, is relevant to this analysis as well. (*See* Def.'s Reply at 11; Pls.' Resp. at 54.)

representation ... that causes a person to do nothing more than he was legally obligated to do without such a representation being made, is not material and therefore cannot constitute actionable fraud." *Reeves v. Porter,* 521 So.2d 963, 967 (Ala.1988) (*citing Ladd v. Brown,* 94 Mich. 136, 53 N.W. 1048 (1892); *Western Land Ass'n v. Banks,* 80 Minn. 317, 83 N.W. 192 (1900)); *see also Ames v. Pardue,* 389 So.2d 927 (Ala.1980). Thus, Plaintiffs' misrepresentation claim must fail as it relates to the submission of the insurance check and the acceleration of the mortgage.

Plaintiff's First Amendment to Complaint, however, advances a misrepresentation claim that survives summary judgment. As stated above, Plaintiffs also claim that Defendant misrepresented their ownership interest in Plaintiffs' Mortgage and Note. Because the court has previously found that there exists a genuine issue of material fact as to the ownership interest of Defendant GECMSI, Defendant's Motion for Summary Judgment is due to be denied as it relates to Plaintiffs' claim for misrepresentation of ownership. (*See* the court's discussion of Plaintiffs' breach of contract claim, *supra.*)

## VI. Plaintiffs' Claims for Suppression Survive Summary Judgment in Part

Plaintiffs claim that Defendant fraudulently suppressed from them the fact that GECMSI would place the insurance check in Plaintiffs' hazard suspense account. (Compl.¶¶ 34–38.) In addition, Plaintiffs contend that Defendant fraudulently suppressed the fact that Defendant could not foreclose on Plaintiffs' property as stated in Defendant's December 14, 1994 general demand letter, and that the Mortgage had not been accelerated. (First Am. Compl. ¶ 49.) Finally, Plaintiffs contend that Defendant suppressed the fact that they lack an ownership interest in the Note and Mortgage. (*Id.*)

Under Alabama law, a plaintiff must establish four elements to support a fraudulent suppression claim: (1) a duty to disclose facts; (2) concealment or non-disclosure of material facts by the defendant; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury. *Norman v. Amoco Oil Co.,* 558 So.2d 903, 905 (Ala.1990); *see also* Ala.Code § 6–5–102 (1975).

The court finds that Defendant has established that there is no genuine issue of material fact as to Plaintiffs' suppression claim regarding the application of the insurance check. Addressing the second element of suppression, Defendant argues that GECMSI fully disclosed the manner in which Defendant would treat the insurance check in a letter sent on September 29, 1994 (Def.'s Mem. Supp. at 24–25, *citing* Ex. D), and that there was thus no concealment by Defendant. Plaintiffs contend, however, that Defendant has not demonstrated that this letter was ever sent. (Pls.' Resp. at 70–71, *citing* Ex. 133.) The first element under a suppression analysis therefore is in dispute.

Turning to the next element addressed by Defendant, the element of reliance, Defendant rightly contends that summary judgment is due to be granted on Plaintiffs' insurance check suppression claim because Plaintiffs did not rely on any alleged suppressions. (Def.'s Mem. Supp. at 25–26; Def.'s Reply at 13–15.) In response, Plaintiffs argue that they relied by tendering the insurance check (Pls.' Suppl. Resp. at 10; Pls.' Resp. at 68–69.) Defendant counters that reliance did not occur by Plaintiffs' tender of the insurance check because they were merely doing that which they were already obligated to do. (Def.'s Reply at 13; *see also* Def.'s Mem. Supp. at 25.) The court finds this argument persuasive, for reasons similar to those discussed by the court regarding Plaintiffs' misrepresentation claims.

Turning to Plaintiffs' suppression allegations pertaining to the acceleration of the Mortgage and the ownership of the Mortgage and Note, the court finds that Defendant's Motion for Summary Judgement is due to be denied. As Plaintiffs point out, the testimony is in conflict about whether the Mortgage was accelerated. (Pls.' Resp. at 62, 69–70.) In addition, the court's prior findings regarding the ownership of the Note and Mortgage control the suppression issue. Specifically, since there exists a genuine issue of material fact as to whether Defendant ever owned either the Mortgage or the Note, there remains a genuine issue as to whether Defendant suppressed its ownership (or lack thereof).

Accordingly, the court finds that Defendant's Motion for Summary Judgment as to Plaintiffs' suppression claims is due to be granted as it relates to the treatment of the insurance check, but otherwise denied.

VII. Plaintiffs' Claim for Breach of Fiduciary Duty Does Not Survive Summary Judgment

Plaintiffs allege that Defendant breached its fiduciary duty to Plaintiffs by failing to apply the insurance proceeds to the principal balance of their Mortgage, or by depositing the proceeds into an interest-bearing account that accrued to Defendant's benefit. (Compl. ¶¶ 39–43.)

■ The Parties present an accurate discussion of fiduciary law in Alabama in their pleadings on summary judgment (*See* Def's Mem. Supp. at 26–29; Pls.' Resp. at 73–87.) Generally the relationship of a lender to a borrower does not impose a fiduciary duty on the lender. *K & C Development Corp. v. AmSouth Bank, N.A.*, 597 So.2d 671 (Ala.1992). This general rule also applies to the relationship between a mortgagee and mortgagor. *Brabham v. American Nat. Bank of Union Springs*, 689 So.2d 82 (Ala. Civ.App.1996); *see also Nettles v. First Nat. Bank of Birmingham*, 388 So.2d 916 (Ala. 1980) (holding no fiduciary duty existed between mortgagee and mortgagor despite mortgagee's active role in attempting to improve mortgage company's financial position).

■ There is, however, an exception to the general rule which allows for a fiduciary duty to arise where special circumstances exist, as where "one person occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or ... one person has gained the confidence of another and purports to act or advise with the other's interest in mind...." *K & C Development Corp.*, 597 So.2d at 675 (*quoting Bank of Red Bay v. King*, 482 So.2d 274 (Ala.1985)). In other words, such a relationship may arise "in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another." *Id.* Unfortunately, the exact parameters of the "special circumstances" that may give rise to a fiduciary duty have not been otherwise defined by Alabama courts. *See Power Equipment Co., Inc. v. First Alabama Bank*, 585 So.2d 1291, 1298 (Ala.1991) (stating "[a]lthough this Court has previously held that 'other special circumstances' may create a fiduciary relationship, those circumstances have never been defined").

■ Plaintiff argues that, in the instant action, Defendant has behaved in such a way as to give rise to a fiduciary relationship, even where the general rule would dictate that no such relationship exists. (Pls.' Resp. at 73–87.) The court finds that, even when viewing the evidence in a light most favorable to the Plaintiffs, no fiduciary relationship existed between Plaintiffs and Defendant.

The only evidence that Plaintiffs advance which could arguably support the finding that a fiduciary relationship existed between Plaintiffs and Defendant concerns the issue of whether the property was a "total loss." (*See* Pls.' Resp. at 74–75.) Defendant, as discussed above, may have acquired knowledge that the house was a total loss at or about the time that Defendant began handling the insurance proceeds. (*Id.*) This knowledge could be construed as giving Defendant "influence" over Plaintiffs, or "dominion," or otherwise placing Defendant in a position of power over Plaintiffs. *See K & C Development Corp.*, 597 So.2d at 675. Despite this potential construction of this evidence, however, there exists a dearth of evidence to support a finding of some special "confidence and reliance that is the cornerstone of a fiduciary relationship." *Power Equipment Co., Inc.* 585 So.2d at 1298. Plaintiffs do not allege or show, for example, that Defendant altered its position toward Plaintiffs based on this knowledge.

In addition, Plaintiffs advance no other evidence to demonstrate that Defendant has somehow acted in a "special" way toward Plaintiffs or that some form of "confidence" had been reposed by Plaintiffs in Defendant. Plaintiffs gloss over this deficiency by presenting evidence dealing with the "breach" aspect of their claim—discussing at length

the treatment of the money by Defendant. (*See* Pls.' Resp. at 76–78, 82–83.) Plaintiffs also contend that "GE clearly usurped control over the money and maintained that control," a contention that goes either to the breach of a fiduciary duty or Plaintiffs' conversion claim, but not to establishing a fiduciary relationship. (*Id.* at 80.)

In short, the court finds that Plaintiffs and Defendant have merely related to each other in their capacities as mortgagee and mortgagor, and that, accordingly, no fiduciary relationship existed between the parties. Plaintiffs' tender of the insurance proceeds was an action which they believed they were supposed to take, or alternatively had to take. (*See* Def.'s Mem. Supp. at 21, *citing* Dep. of Mary Atkins at 51.) It does not speak to a confidential or special relationship. Moreover, even if a fiduciary duty had existed between the Parties, there is no evidence that Defendant would have treated Plaintiffs' money in a different way. The treatment of the money was governed by the terms of the Mortgage and the issue of whether the house was repairable or a "total loss," not by whether the Parties were in a fiduciary relationship.

Accordingly, the court finds that Defendant's Motion for Summary Judgment as to Plaintiffs' claim for breach of fiduciary duty is due to be granted.

### ORDER

Based on the foregoing, it is hereby CONSIDERED and ORDERED that:

(1) Plaintiffs' Motion to Supplement Submission in Opposition to Defendant's Motion for Summary Judgment, filed July 30, 1997, be and the same is hereby GRANTED;

(2) Defendant's Motion in Limine to Exclude Testimony Regarding Prior Lawsuit, filed January 9, 1998, be and the same is hereby GRANTED;

(3) Plaintiffs' Motion to Extend the Discovery Cutoff, filed July 18, 1997, be and the same is hereby DENIED AS MOOT;

(4) Plaintiffs' Motion to Strike Affidavit of Daris Foster, filed July 2, 1997, be and the same is hereby DENIED AS MOOT;

(5) Plaintiffs' Motion to Strike Affidavit of Richard A. Kaplan, filed July 2, 1997, be and the same is hereby DENIED AS MOOT;

(6) Plaintiffs' Motion to Renew their Motion to Strike Affidavit of Daris Foster, filed July 18, 1997, be and the same is hereby DENIED AS MOOT;

(7) Plaintiffs' Motion to Amend their Motion to Strike Affidavit of Daris Foster, filed July 18, 1997, be and the same is hereby DENIED AS MOOT;

(8) Plaintiffs' Motion to Strike Additional Affidavit of Daris Foster, filed July 18, 1997, be and the same is hereby DENIED AS MOOT;

(9) Defendant's Motion for Summary Judgment, filed May 7, 1997, be and the same is hereby DENIED as it relates to Plaintiffs' claims for breach of contract, conversion, and violation of RESPA;

(10) Defendant's Motion for Summary Judgment, filed May 7, 1997, and Amendment to Motion for Summary Judgment, filed June 3, 1997, be and the same are hereby GRANTED as they relate to Plaintiffs' claim for misrepresentation as to the submission of the insurance check and the acceleration of the mortgage, but DENIED as they relate to Plaintiff's claim for misrepresentation of ownership;

(11) Defendant's Motion for Summary Judgment, filed May 7, 1997, and Amendment to Motion for Summary Judgment, filed June 3, 1997, be and the same are hereby GRANTED as they relate to Plaintiffs' claim for suppression as to the insurance check, but otherwise DENIED;

(12) Defendant's Motion for Summary Judgment, filed May 7, 1997, be and the same is hereby GRANTED as it relates to Plaintiffs' claim for breach of fiduciary duty.